420 S.E.2d 891

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Gary Paul KERNS, Defendant Below, Appellant.**

**No. 20485.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1992.

Decided July 1, 1992.

Gregory W. Sproles, Breckinridge, Davis, Sproles & Stollings, Summersville, for appellant.

Mario J. Palumbo, Teresa A. Tarr, Office of the Atty. Gen., Charleston, for appellee.

McHUGH, Chief Justice:

This case is before the Court upon the appeal of Gary Paul Kerns, from a conviction of three counts of grand larceny in the Circuit Court of Nicholas County. The appellee is the State of West Virginia. Numerous errors on the part of the circuit court are assigned by the appellant.

## I

The appellant was employed by Standard Hydraulics until May, 1984. Standard is a company that repairs hydraulic component units used in mining operations.

In early 1983, while employed at Standard, the appellant formed Dynatec, a company which engaged in business similar to Standard. The appellant met with Daniel Morgan, the purchasing agent for Standard, to discuss Standard's inventory. The appellant told Morgan that he (the appellant) intended to remove from Standard's premises units which were on such premises but were not in the "Cardex" system, which is the mechanism for inventory control at Standard. The appellant told Morgan that it was his intention to use these units at Dynatec.

Morgan then began compiling a list of such units, that is, those located on Standard's premises, but not in the Cardex inventory system. Nine lists were compiled by Morgan into one "master list," which was then given to the appellant.

On three separate occasions during March and/or April, 1983, the appellant and Morgan went to Standard and removed these units from the company's premises. The units were taken to the garage of Thurman Kerns, the appellant's uncle.

Morgan testified that the original market value of the stolen units is in excess of $100,000.

In October, 1983, the appellant asked Morgan if he still had the lists used to designate the units at issue, and Morgan told the appellant that he did not have them.

In May, 1984, the appellant left his employment at Standard, shortly after purchasing Craigsville Electric & Machine Co. (CEMCO).

In 1985, Standard instituted a civil action against the appellant for allegedly breaching a five-year covenant not to compete which was entered into in 1972. In 1986, Standard discovered that the units were missing but had no proof of their theft until 1987, when Morgan turned over the lists to Standard.[1] The civil action between Standard and Morgan was still going on at the time that Morgan turned over the lists to Standard.[2]

---

**1.** Although Morgan had previously told the appellant that he no longer had the lists, in reality, he had kept them.

**2.** In November, 1989, this Court dismissed the appellant's motion to dissolve an injunction en-

forcing the covenant not to compete due to mootness. *Standard Hydraulics, Inc. v. Kerns,* 182 W.Va. 225, 387 S.E.2d 130 (1989).

The appellant was arrested pursuant to a warrant sought by James Brogan, Standard's private investigator. The Nicholas County prosecutor and that entire office voluntarily recused itself due to a conflict of interest.[3] Consequently, Robert P. Martin was appointed special prosecutor and Dan Hardway, who had been retained by Standard as its private prosecutor, was appointed to assist Martin in the criminal proceedings.

In August, 1988, the appellant was indicted on thirteen counts of grand larceny, embezzlement, and receiving stolen goods. However, on May 17, 1989, this Court ordered that that indictment be dismissed because Standard's private prosecutor, Hardway, had appeared before the grand jury in the case. *Kerns v. Wolverton*, 181 W.Va. 143, 381 S.E.2d 258 (1989).[4]

The appellant was again indicted in September, 1989, this time on only three counts of grand larceny. A petit jury found the appellant guilty on all three counts in December, 1990.[5] The appellant was sentenced to: three concurrent one-year prison terms in the Nicholas County Jail; court costs, including those of the special prosecutor, which amounted to $40,-842.90; and restitution to Standard over a period of five years, which amounted to $100,374.06. The circuit court then suspended imposition of incarceration and placed the appellant on probation for five years.

## II

As stated previously, the appellant raises several assignments of error. We primarily address the one contention of the appellant that we believe merits reversal and remand of this case. As discussed later herein, however, the appellant's conviction

is affirmed with respect to the other assignments of error raised.

## III

■ The appellant contends that the circuit court committed error by ordering that he pay the fees of the special prosecutor. Under the circumstances of this case, we agree with the appellant's contention. *W.Va.Code*, 62–12–9 [1992] provides that a circuit court may impose, as a condition of probation, that a convicted criminal defendant pay the costs of the criminal proceedings. Specifically, that section provides, in part:

> In addition [to other conditions of probation], the court may impose, subject to modification at any time, any other conditions which it may deem advisable, including, but not limited to, any of the following:
>
> . . . .
>
> (2) That [the probationer] shall pay any fine assessed and the costs of the proceeding in such installments as the court may direct.

In *Armstead v. Dale*, 170 W.Va. 319, 294 S.E.2d 122 (1982), which involved the rendering of legal services to an indigent criminal defendant, we recognized that this statutory provision permits a trial court to impose payment of attorney's fees if it will not cause the probationer undue hardship. "A probation condition requiring repayment of costs and attorneys fees is constitutionally acceptable if it is tuned to the probationer's ability to pay without undue hardship and is subject to modification if his indigency persists or reoccurs. W.Va. Code, 62–12–9." *Id.*, syl. pt. 1.

■ The State, on the other hand, while recognizing that this is a matter of

---

**3.** An assistant prosecutor, who eventually became prosecutor, in his private practice, represented a bank whose president is a business partner of the appellant.

**4.** In syllabus point 2 to *Kerns v. Wolverton*, we held: "A private prosecutor is not a person who

is authorized to appear before a grand jury or participate in grand jury proceedings."

**5.** In July, 1990, a mistrial was declared after one juror testified that she was approached by an employee of Cemco and another juror was approached by a witness.

first impression by this Court, maintains that the circuit court did not commit error by ordering the appellant to pay the fees of the special prosecutor. The State asserts that *W. Va. Code*, 62–12–9 [1992] would also apply to the situation at hand, where a special prosecutor is involved. We do not agree.

In *Armstead,* we were addressing a statutory provision under the Public Legal Services Act, the precursor to the current Public Defender Services Act, *W. Va. Code*, 29–21–1, *et seq.*[6] Accordingly, syllabus point 1 to *Armstead* applies to *defense* attorneys who are appointed due to indigency on the part of the criminal defendant. It would have no application under the circumstances of this case, where the fees at issue are those of a special prosecutor.

In *State v. St. Clair,* 177 W.Va. 629, 355 S.E.2d 418 (1987), we pointed out that "[a]llowance and recovery of costs was unknown at common law, and therefore only costs specifically allowed by statute may be recovered." *Id.,* 177 W.Va. at 631, 355 S.E.2d at 420. Accordingly, whether a defendant may be ordered to pay the fees of a special prosecutor would depend on the existence of a statute providing for such. Because there is no such statute, the defendant may not be ordered by a circuit court to pay those fees.

Our research of the authority of a court to impose fees of a special prosecutor as a condition of probation reveals that few courts have addressed the issue with a focus on the inherent inequities that may result from such an imposition. For example, in *State v. Welkos,* 14 Wis.2d 186, 109 N.W.2d 889 (1961), the Supreme Court of Wisconsin held that the trial court could

impose the special prosecutor's fees as a condition of probation because there existed no statutory *bar* to doing such, but rather, a statute *did* exist allowing the general imposition of "the costs of prosecution." However, the specific probation statute allowing imposition of "the costs of prosecution" was repealed, and in *State v. Amato,* 126 Wis.2d 212, 376 N.W.2d 75 (Ct.App.1985), the Court of Appeals of Wisconsin held that the general statute enumerating the costs allowed to be imposed "and *no others,*" prohibited the imposition of special prosecutors' fees. Furthermore, the *Amato* court held that the probation statute allowing the trial court to impose "reasonable and appropriate" conditions of probation, did not allow the imposition of such fees. The point to be made about these cases is that they were decided solely on statutory construction grounds, with an apparent indifference to the potential inequities of assessing the "reasonable" fees of a special prosecutor.

Based upon the above, we hold that *W. Va. Code*, 62–12–9 [1992] does not authorize a circuit court to impose, as a condition of probation, that a convicted criminal defendant pay the fees of a special prosecutor as costs of the prosecution.

Accordingly, the judgment of the circuit court in this respect is reversed, and this case is remanded so that the circuit court may reimpose the conditions of probation consistent with this opinion.[7]

**IV**

We now turn to other assignments of error raised by the appellant.

**A. *Failure to Produce Witness Statement***

The appellant contends that the circuit court committed reversible error in failing

---

**6.** Specifically, the statute at issue was the former *W. Va. Code,* 29–21–17(d), which provided:

(d) Subject to such rules as the supreme court of appeals shall promulgate, the circuit court shall have plenary power *in every case in which services are rendered to an indigent person,* whether or not services are thereafter denied under this section, to make such order for the repayment of costs and compensation for services granted to such person, either as condition of probation or otherwise, as the

court may determine to be reasonable given the financial circumstances of the affiant. (emphasis supplied)

**7.** If the legislature chooses to authorize the imposition of such fees as a condition of probation, then the outcome of this case may have been different. However, because there is no legislative authority, this Court will not create such an authorization.

to grant the appellant's motion for production of a written statement pursuant to *W.Va.R.Crim.P.* 26.2.

At the beginning of the cross-examination of Morgan, the State's primary witness, counsel for the appellant inquired as to a reference made by Morgan during direct examination. Specifically, Morgan had stated on direct examination that the Slevin family (owners of Standard) had hired a private investigator, Brogan, with respect to the covenant not to compete issue.[8] Morgan testified that he had disclosed the situation of the stolen units to the investigator Brogan.

On cross-examination, Morgan testified that the investigator Brogan had made a written statement of what Morgan had told him and that Morgan had signed it.

The appellant immediately made a motion to produce the written statement pursuant to *W.Va.R.Crim.P.* 26.2. A discussion ensued out of the jury's presence as to whether the investigator Brogan worked for Standard, in a private capacity, or for the State, as an agent of the prosecutor in this case.

The State maintains that, during the trial, it never had access to the statement taken by Brogan, and therefore, it was not required to provide it to the defendant. Moreover, the State contends that Brogan, at the time he took Morgan's statement, was employed by Standard, *in a private capacity*, and not by the State.

The appellant points out that the responses to a pre-trial motion for disclosure of information in connection with grand jury proceedings clearly indicate that Brogan, the investigator, was working *for the State*.

■ *W.Va.R.Crim.P.* 26.2 provides, in relevant part:

**Rule 26.2 Production of Statements of Witnesses.** (a) *Motion for Produc-*

*tion.* After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce for the examination and use of the moving party any statement of the witness that is in their possession that relates to the subject matter concerning which the witness has testified.

. . . .

(e) *Sanction for Failure to Produce Statement.* If the other party elects not to comply with an order to deliver a statement to the moving party, the court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or if it is the attorney for the state who elects not to comply shall declare a mistrial if required by the interest of justice.

(f) *Definition.* As used in this rule, a 'statement' of a witness means: adopted or approved by him;

(1) A written statement made by the witness that is signed or otherwise adopted or approved by him;

(2) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical or other recording or a transcription thereof;

(3) A statement, however taken or recorded or a transcription thereof, made by the witness to a grand jury.

In *State v. Watson*, 173 W.Va. 553, 318 S.E.2d 603 (1984), this Court held that under *W.Va.R.Crim.P.* 26.2 a prosecutor is required to disclose statements to which he or she has access, even though not in possession. "Under the 'in possession of' language of Rule 26.2[(a)] of the West Virginia Rules of Criminal Procedure, a prosecutor is required to disclose statements to

---

**8.** As stated in section I, in 1985, Standard instituted a civil action against the appellant for allegedly breaching a five-year covenant not to compete which was entered into in 1972.

which he has access even though he does not have the present physical possession of the statements." *Watson*, syl. pt. 5. At issue in *Watson* was the production of grand jury transcripts.

■ There is authority, as the State correctly points out, that the failure to follow the mandate of this rule is subject to a harmless error analysis. As we have pointed out, "there is substantial Federal authority which indicates the failure to allow inspection does not always constitute prejudicial or reversible error." *State v. Tanner*, 175 W.Va. 264, 266, 332 S.E.2d 277, 279 (1985).[9] In determining reversible error, we stated: "The question of whether the error was harmless or prejudicial hinges upon whether there was a substantial discrepancy between the contents of the prior statement or report and the witness' testimony during trial." *Id.* Normally, in making this determination, because the statement is not part of the record, this Court will remand the case so that the lower court may "require the production of the report in accordance with the Rules of Criminal Procedure and" then, "make a determination of whether the report varied from the testimony adduced during trial and whether the defendant was prejudiced by the non-production." *Id.*, 175 W.Va. at 266, 332 S.E.2d at 279–80.

We also issued remands for further development of the record on this very issue in *State v. Gale*, 177 W.Va. 337, 352 S.E.2d 87 (1986), and *State v. Miller*, 184 W.Va. 492, 401 S.E.2d 237 (1990).

However, in this case, we need not determine whether prejudicial error occurred, nor does the circuit court need to review any discrepancy in testimony, because it is clear that the statement taken by Brogan was done so during the *private* investigation of the covenant not to compete matter. This was done prior to the initiation of the criminal proceeding. Although Brogan was eventually hired by the special prosecutor in the ensuing criminal proceeding, the direct examination of Morgan on the statement elicited testimony that related to Brogan's private investigation. It is clear that the State did not have access to this statement at the time of the criminal trial.[10] Consequently, the statement at issue was not in the possession of the State, nor did the State have access to it. *See* syl. pt. 5, *Watson*. Therefore, the State was not required to turn this over to the appellant under *W.Va.R.Crim.P.* 26.2.

"Whether, in a particular case, the production of such a statement will be ordered is a question for the trial court in its discretion to resolve." Charles E. Torcia, *Wharton's Criminal Procedure* § 336, at 655 (13th ed. 1990) (citing *Watson*). We do not believe that the circuit court abused its discretion by refusing to order the State to produce this statement.

## B. *Failure to Disclose Evidence*

During the trial, Joe Frazer, a former employee of Standard and current employee of CEMCO, testified that the CEMCO inventory list was substantially similar to Morgan's list.

Upon recross examination of Joe Frazer, the State had marked two "blowup" lists, which reflected in an enlarged way, the

---

9. "Our Rule 26.2 is patterned after Rule 26.2 of the Federal Rules of Criminal Procedure[.]" *Watson*, 173 W.Va. at 558, 318 S.E.2d at 608.

10. We also point out that there is nothing in the record to indicate that the State wrongfully concealed any evidence. In fact, with respect to this issue, the special prosecutor questioned defense counsel about the statements, documents, and files that he provided so that defense counsel could review them, including an investigative report purportedly prepared by Brogan. The record is clear that the State did not wrongfully withhold anything from the appellant.

Moreover, although we recognize that it is the State's duty to turn over the statement if the prosecutor had access to it, we do point out that the circuit court afforded defense counsel ample opportunity to obtain the statement from Brogan by subpoena. Defense counsel, through the services of an investigator, did attempt to subpoena Brogan, to no avail. Thus, this failed attempt by the appellant would seem to be all the more supportive of the State's contention that it did not have access to the statement, inasmuch as access was difficult to obtain.

information from Morgan's inventory list, and the CEMCO inventory list. The purpose of these two enlarged lists was so that the jury could compare the missing Standard inventory with the CEMCO inventory. The two lists were actually moved into evidence as State's exhibits 1 and 2, while the blowups, which were *not* moved into evidence, are exhibits 8 and 9.

The appellant objected to the use of the blowups on the ground that they were incomplete and inaccurate with respect to particular types of the hydraulic units stolen. According to the record, defense counsel had twenty minutes to review the blowups prior to arguing the appellant's objection to the use of the blowups. The circuit court, in overruling the objection, stated that the appellant could point out the allegedly incomplete and/or inaccurate nature of the blowups to the jury.

The appellant also contends that he was surprised by the State's use of four photographs of hydraulic units which were loaded on a pick-up truck. Like the blowups of the inventory lists, these pictures were not moved into evidence, but only marked as exhibits.

The State asserts that the pictures were used only to demonstrate that the units could have been loaded onto a truck, thus, advancing the State's theory as to the *means* by which they were stolen.

The appellant points out that prior to trial, the blowups and photographs were not disclosed to him upon his motion under Rule 16 of the *West Virginia Rules of Criminal Procedure*, thus contending that he was "surprised" in violation of the protections of that Rule.[11]

The State asserts that the nondisclosure was not a "surprise" in this case because the appellant was aware of the State's theory and the demonstrative evidence did not hamper the preparation or presentation of the appellant's case. Moreover, with respect to the pictures, the State asserts that they were introduced to rebut Frazer's assertion that 161 hydraulic units could not have been placed in the back of a pick-up truck on three separate occasions. We agree with the State's assertions in this regard.

■ However, we do not believe that *W.Va.R.Crim.P.* 16 is implicated in this case. Rather, as the State contends, the use of the blowups and the photographs was merely used for *demonstrative* purposes.

As Professor Cleckley has pointed out, this Court "has consistently held that the admission of photographs is within the broad discretion of a trial judge, leaving for appellate review only the question of whether that discretion was abused." Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 10.-2(E) (2d ed. 1986).

Furthermore, with respect to the use of exhibits similar to the blowups, Professor Cleckley has written:

> In syllabus point 1 to *State v. Johnson,* 179 W.Va. 619, 371 S.E.2d 340 (1988), we held:
> > Our traditional appellate standard for determining whether the failure to comply with court ordered pretrial discovery is prejudicial is contained in Syllabus Point 2 of *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980), and is applicable to discovery under Rule 16 of the Rules of Criminal Procedure. It is summarized: The nondisclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.
> *Grimm* was decided prior to adoption of the *West Virginia Rules of Criminal Procedure.*

**11.** *W.Va.R.Crim.P.* 16 provides, in relevant part:
  **Rule 16. Discovery and Inspection.** (a) *Disclosure of Evidence by the State.*
  (1) Information Subject to Disclosure.

  . . . .

  (C) Documents and Tangible Objects.— Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody and control of the state, and which are material to the preparation of his defense or are intended for use by the state as evidence in chief at the trial, or where obtained from or belonging to the defendant.

The general rule in the United States and that followed in West Virginia is that maps, charts, diagrams and blackboards are permitted to be used where relevant to the issues and helpful to the jury in understanding the testimony of the witnesses.... Therefore, a witness should be permitted to refer to diagrams even though they were photographic enlargements of mechanical drawings.... When a chart, map, diagram or blackboard does not contain complicated calculations requiring the need of an expert for accuracy, no special expertise is required for presenting the chart....

The above exhibits are not offered into evidence as independent proof of a fact to be established but *are used to help explain and make clear to the jury the testimony of the witnesses.*

*Id.* § 10.2(F) (emphasis supplied) (citations omitted).

■ "Generally, the admissibility of demonstrative evidence is a matter within the discretion of the trial court." *State v. Hardway,* 182 W.Va. 1, 7, 385 S.E.2d 62, 68 (1989). *See* 2 John William Strong, *McCormick on Evidence* § 212 (4th ed. 1992); 29 Am.Jur.2d *Evidence* § 769 (1967).

■ In this case, the appellant suffered no prejudice with respect to this assignment of error. As stated previously, counsel for the appellant had adequate time to review the blowups and even argue to the jury any alleged inaccuracies contained therein. The photographs merely advanced the State's theory of the case concerning the means by which the hydraulic units were transported.

The appellant was not prejudiced by the State's use of the blowups and photographs because they, in no way, hampered the preparation or presentation of the appellant's case. Accordingly, the circuit court did not abuse its discretion, and there is no reversible error in this regard.

### C. *Failure to Provide Exculpatory Evidence*

■ The appellant contends that the State failed to provide exculpatory evidence under the following circumstances: Prior to trial, the appellant had moved for a bill of particulars, which the State answered by providing a one-page typed list of the property stolen. However, during cross-examination of Morgan, the State's primary witness, Morgan asserted that he *thought* that there were two pages. The appellant claims that the failure to provide him with the purported second page constitutes a withholding of exculpatory evidence and that such failure is reversible error. We do not agree.

This assignment of error lacks merit for several reasons. First, there is *nothing* asserted by the appellant to indicate that the "missing" page, if there is one, is exculpatory. Rather, it is merely an inconsistency in Morgan's testimony.

Secondly, it is clear from the record, during an argument between counsel over this issue, that counsel for the appellant knew during a preliminary hearing that Morgan's initial list was typewritten into two or maybe even *three* pages. The circuit court, in denying the appellant's motion for a mistrial, pointed out that counsel for the appellant was aware of the possibility that there may have been more pages in existence.

Finally, even assuming *arguendo* that the State knew of a second page and intentionally withheld it, this Court has restated the law as set forth by the United States Supreme Court, that such evidence is only material if it would change the underlying result. In *State v. Fortner,* 182 W.Va. 345, 353, 387 S.E.2d 812, 820 (1989), we stated:

[T]he United States Supreme Court, in *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985), has restated the test of materiality as follows: 'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'

The record before us indicates that it is reasonably probable that the underlying result would not have been changed by the surfacing of the alleged second page. Rather, Morgan merely testified that he *thought* that there was a second page—not that there necessarily was one. Furthermore, it is reasonably probable that the existence of this second page, containing a list of stolen items, would not have changed the jury's mind of convicting the appellant in this case. Accordingly, no error is present in this regard.

### D. *Failure to Remove Special Prosecutor*

The appellant contends that the circuit court committed reversible error by not removing the special prosecutor because the special prosecutor was appointed in the *original* criminal case which was ultimately dismissed. The appellant contends that the record *in this case* does not show that the prosecutor's office was properly removed.

However, the impediment which prevented the prosecutor's office from proceeding *originally* was then-assistant prosecutor Greg Tucker's representation of the appellant's business partner. *See* note 3, *supra.* By the time the present action was brought, Tucker himself had been elected prosecutor, and he testified at a June 11, 1990 hearing on this motion that the impediment *still* existed.

■ In syllabus point 3 to *State ex rel. Preissler v. Dostert*, 163 W.Va. 719, 260 S.E.2d 279 (1979), we held:

Before a prosecuting attorney may be disqualified from acting in a particular case and relieved of the duties imposed upon him by the Constitution and by statute, the reasons for his disqualification must appear on the record, and where there is any factual question as to the propriety of the prosecutor acting in the matter, he must be afforded notice and an opportunity to be heard.

However, we believe that there is no error in this situation inasmuch as the charges in the second indictment were the same as those in the first, and the impediment that led to the appointment of a special prosecutor still existed at the time of the reindictment.

■ Accordingly, we hold that where a special prosecutor is appointed to try a criminal case due to a conflict, and the case is dismissed without prejudice, but the defendant is reindicted on the same charges, it is not error for a trial court to deny a motion to remove the special prosecutor if it is shown that the conflict which led to the original removal of the regular prosecutor still exists. Therefore, there is no error in this regard.

### E. *Participation of Private Prosecutor*

■ The appellant contends that the private prosecutor, Dan Hardway, wrongfully possessed documentary evidence that should only have been presented to the grand jury. Specifically, the appellant asserts that Marion Myers, the chief executive officer of the First Community Bank of Richwood, had provided a loan application to the grand jury which listed, among other things, certain inventory of CEMCO.

Tim Ramey, a defense witness and one who engaged in business similar to that of the appellant, testified that he had seen the documents provided to the grand jury by Myers. Ramey testified that the documents were shown to him by Hardway. The appellant claims that this is a violation of *W.Va.R.Crim.P.* 6, which ensures secrecy in the grand jury proceedings.

*W.Va.R.Crim.P.* 6(e)(3)(A) & (B) provides:

(3) Exceptions.

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to:

(i) An attorney for the state for use in the performance of such attorney's duty; and

(ii) Such official personnel as are deemed necessary by an attorney for the state to assist an attorney for the state in the performance of such attorney's duty to enforce criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph *shall not utilize that grand jury material for any purpose other than assisting the attorney for the state in the performance of such attorney's duty to enforce criminal law.* An attorney for the state shall promptly provide the circuit court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

(emphasis supplied)

Because Hardway, at the time he allegedly showed Ramey the documents at issue, was not "official personnel" pursuant to Rule 6, the appellant maintains that the secrecy of the grand jury proceedings was violated.

We do not believe that reversible error is present on this point. The record in this case does not fully support the appellant's contention that it was Hardway who possessed and revealed the documentary evidence, because at the trial on the original indictment, Ramey had testified that he could not remember if it was Hardway or another investigator, Mark McMillion, who had shown him the document.

Accordingly, because the record before us indicates that the appellant's key witness in this regard was uncertain of the role of the private prosecutor, there is no error.[12]

## V

Based upon the foregoing, the judgment of the Circuit Court of Nicholas County is reversed for reasons stated in section III of this opinion, and this case is remanded. The appellant's conviction is affirmed, however, in all other respects.

Affirmed, in part; reversed, in part, and remanded.

---

12. Other assignments of error raised by the appellant are completely without merit, and therefore, we decline to address them.