439 S.E.2d 455

**Russell B. BELKNAP, Defendant Below, Appellant**

v.

**Jane L. CLINE, Commissioner of the West Virginia Department of Motor Vehicles of The State of West Virginia, Plaintiff Below, Appellee.**

No. 21758.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1993.

Decided Dec. 15, 1993.

John J. Cowan, Charleston, for appellant.

Paul E. Jordan, Sr. Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

Russell B. Belknap appeals a January 8, 1993, decision of the Circuit Court of Kanawha County affirming a decision of the Commissioner of Motor Vehicles (the "Commissioner") revoking the Appellant's driver's license for driving under the influence of alcohol. The Appellant contends that the circuit court erred in affirming the decision of the Commissioner and requests this Court to reverse that decision. We reverse the decision of the Circuit Court of Kanawha County and remand this matter to the Commissioner for further proceedings consistent with this order.

## I.

On April 21, 1989, at approximately 11:55 p.m., the Appellant was driving his 1986 Chevrolet truck on State Route 4 near Sutton, West Virginia. Trooper M.G. DeBord and Sergeant J.K. Riffle of the West Virginia State Police were travelling north on State Route 4. Sergeant Riffle testified that he noticed the Appellant's truck weaving on the road and crossing the center line several times. He further testified that he followed the vehicle for approximately one-half to three-quarters of a mile. Trooper DeBord also testified that he noticed the truck crossing the center line.

Upon the initial stop of the vehicle, the driver was identified as Russell B. Belknap, the Appellant in this matter. Sergeant Riffle and Trooper DeBord both testified that they noticed a strong odor of alcohol on the Appellant's breath. Furthermore, the Appellant apparently had bloodshot eyes and appeared to have difficulty standing. Trooper DeBord performed the field sobriety tests on the Appellant, first administering the walk-and-turn test. The Appellant had difficulty keeping his balance while listening to instructions, did not touch his heel to his toe on every step, used his arms for balance, and lost his balance while turning. On that basis, Trooper DeBord concluded that the Appellant had failed the walk-and-turn test.

Trooper DeBord then administered the one-leg-stand test, and the Appellant was unable to count to thirty as requested and had to put his foot down more than three times. A horizontal gaze nystagmus test was also given. Trooper DeBord testified that the Appellant was unable to follow an object smoothly with either of his eyes. On the basis of these three sobriety tests, Trooper DeBord arrested the Appellant for driving under the influence of alcohol and transported him to the Braxton County Annex Building ("Annex Building") where a secondary chemical test of the breath was administered. Upon arriving at the Annex Building, Miranda warnings and an implied consent form were given to the Appellant. Trooper DeBord videotaped the procedures at the Annex Building, including the administration of the breathalyzer test.[1] The procedures designed to test the Appellant's sobriety at the scene were not videotaped.

A hearing before the Department of Motor Vehicles was held on May 5, 1990. During that hearing, the troopers testified regarding the arrest of the Appellant, the administration of the sobriety tests, and the videotaping of the activities conducted at the Annex Building. Trooper DeBord moved the videotape into evidence and asked that the hearing examiner hold the record open so that the video might be considered.[2] The Appellant, unrepresented by counsel, was asked if he objected to the introduction of the video. He responded that he "would like for it to be reviewed...." The hearing examiner then gave the trooper thirty days to produce a copy of the video, designated it as Exhibit Number Four, and explained that "it will be made part of the record and the Commissioner will review that carefully." The Appellant further stated that "the events on the tape I think will be helpful to me and, and what he said about, I'd like to see that, I'd like to have, you know, of course, I guess they will be the one to examine it...." Once again, the Appellant was assured by the hearing examiner that the video would be reviewed carefully.

For reasons unknown or undisclosed, the video was never submitted. On January 30, 1991, the Commissioner stated that the record was to remain open for an additional

---

1. The result of the breathalyzer showed .21 hundredths of one percent of alcohol. Due to the trooper's failure to lay a proper foundation for the results of such test, however, the hearing examiner did not admit the results. In order to lay such foundation, Trooper DeBord was apparently required to introduce evidence that the machine used was the designated secondary chemical testing device of that area and that the device had been given an accuracy inspection test within six months prior to the date of the Appellant's arrest. The hearing examiner determined that his failure to comply with these requirements rendered the test results inadmissible.

2. Trooper DeBord testified that the video would show the Appellant blowing into the Intoxilyzer machine, being advised of his rights, and being provided with an implied consent form. The trooper did not otherwise imply that the videotape would inculpate the Appellant.

thirty days for the submission of the video. Again, no video was received.

On May 28, 1991, the Commissioner ordered that the Appellant's license be suspended. The Commissioner noted that the license was suspended based upon the testimony of the officers and in accordance with *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984).[3]

On June 13, 1991, the Appellant appealed this matter to the Circuit Court of Kanawha County. The Appellant contended that the failure to submit the video constituted failure to prosecute, that the Commissioner erred in failing to require submission of the video since it was the best evidence of what the officers allegedly observed, that the video would have demonstrated that the Appellant was not intoxicated, and that failure to place the video into evidence required dismissal of the proceedings. The decision of the Commissioner was affirmed, without hearing or oral argument, on January 8, 1993. The circuit court apparently reasoned that because the Commissioner did not rely on the results of the breathalyzer test, the video depicting the administration of such test was neither relevant nor necessary to the determination. The circuit court noted that "[t]he absent tape about which the appellant complains relates to the administration of the secondary chemical test that was not even considered by the Commissioner in reaching his decision."

On appeal, the Appellant contends that the lower court erred by concluding that the video was not relevant to the testimony of the officers regarding the Appellant's condition and demeanor. The Appellant also contends that the lower court erred in refusing to apply a principle similar to that expressed in syllabus point 3 of *McGlone v. Superior Trucking Co.*, 178 W.Va. 659, 363 S.E.2d 736 (1987), providing that the unjustified failure to call an available witness may, if the trier of fact so finds, give rise to an inference that the witness would have been adverse to the party failing to call such witness.[4]

II.

Initially, we emphasize that we do not mean to suggest that the video, simply because it existed, had to be introduced into evidence. The crucial issue here is not the existence of the video but the fact that it was offered into evidence by the police, was thereafter also requested by the Appellant, and was indeed ordered by the hearing examiner. The officer raised the issue of the video and moved it into evidence. The Appellant then approved of the introduction, and the hearing examiner ordered the video to be produced within thirty days. Once this sequence of events occurred, the issue was no longer one of whether to introduce the video or whether it was necessary to the proceedings. The issue then focused more centrally on the Appellant's right to have that evidence introduced as promised by the hearing examiner. If the police had not initially offered the video as evidence, the remaining evidence against the Appellant may indeed have been sufficient to justify suspension of the Appellant's license.[5]

However, the evidence was offered by the police, the Appellant signified his desire to have the evidence submitted, and the hearing examiner ordered that it be produced. Moreover, in a case such as this, where the breathalyzer results were ruled inadmissible and the primary evidence of intoxication was

---

3. In *Albrecht*, we explained that for purposes of making an administrative revocation of a driver's license, there are no statutory provisions requiring the administration of a chemical sobriety test in order to prove that the motorist in question was driving under the influence of alcohol. 173 W.Va. at 272, 314 S.E.2d at 864.

4. We reverse this decision on the basis of the Appellant's first assignment of error and do not address the Appellant's contention that a *McGlone* principle should be applicable to the failure to introduce an available video into evidence.

5. As we noted in *DMV v. Cline*, 188 W.Va. 273, 423 S.E.2d 882, (1992), it is not necessarily reversible error for the DMV to rely solely on an arresting officer's testimony to prove that a defendant was driving under the influence of alcohol. *Id.* at 275, 423 S.E.2d at 884. The present case should certainly not be interpreted to alter that standard in any manner. In this case, it is the production and review of evidence once it has been ordered with which we are concerned.

the officer's observation of the Appellant's demeanor, the Appellant himself would have a right to introduce the video into evidence.

The Appellee contends that the only purpose to be served by the introduction of the video was to prove that the breathalyzer was administered. Since the results of the breathalyzer were deemed inadmissible and were not relied upon by the hearing examiner, the Appellee argues that the video was not relevant. Obviously, however, the Appellant could potentially have employed the video to challenge the officers' characterization of him as intoxicated. Certainly, once the evidence was ordered by the hearing examiner, the Appellant had the right to have the evidence inspected by the examiner if the evidence was still in existence.

We recognize that the video in question may have simply been misplaced, in which case it could be located for the hearing examiner's review, or it could have been lost entirely. We recently addressed the issue of lost evidence in a criminal context in *State v. Kerns,* 187 W.Va. 620, 420 S.E.2d 891 (1992). In that case, the Appellant contended that the State had failed to provide exculpatory evidence in the form of a list of items allegedly stolen by the Appellant. *Id.* at 629, 420 S.E.2d at 900. Although the state provided only one page of items, the purchasing agent for the business from which the items were allegedly stolen testified that he thought there were originally two pages of items. *Id.* We concluded that the appellant had not demonstrated that the missing evidence was exculpatory, and we further explained that even if the prosecution knew of the existence of the second page and intentionally withheld it, such evidence is only material if it would have changed the underlying result. *Id.* We concluded in *Kerns* that it was "reasonably probable that the underlying result would not have been changed by the surfacing of the alleged second page." *Id.* at 630, 420 S.E.2d at 901.

We have also explained, within the civil context, that "[w]hen it is shown that an original writing containing facts relevant to the issues in a case is lost or destroyed

secondary evidence of its contents is admissible." Syl.Pt. 1, *State ex rel. Alderson v. Holbert,* 137 W.Va. 883, 74 S.E.2d 772 (1953). Moreover, we explained in *Alderson* that we were adopting the principles enunciated in 20 American Jurisprudence, *Evidence,* § 440, indicating that the proof of loss or destruction of a writing need not show loss or destruction "beyond all possibility of mistake or proof that will exclude every hypothesis of the existence of the original." 137 W.Va. at 891, 74 S.E.2d at 777 (quoting 20 American Jurisprudence, *Evidence,* § 440).

> It is sufficient if the party satisfied the court that, after due and diligent search upon his part, the instrument cannot, due to its loss or destruction, be produced upon the trial. All that one is expected to show is that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest and which were accessible to him.

*Id.* Based upon the principles adopted by the Court with respect to loss or destruction of evidence, we conclude that if the video cannot be located, the hearing examiner must conduct some type of evidentiary hearing in which he determines, pursuant to the explanation above, whether a diligent search has been conducted to ascertain the location of the evidence. If the hearing examiner concludes that the evidence has been lost or destroyed, and that such loss or destruction was not an intentional act, secondary evidence of the contents of the video may be admitted, and the case may proceed in the absence of the video.

The Appellee emphasizes that while the Appellant's license has now been revoked for the requisite period of time, the Appellant has not yet completed the required safety and treatment program. Both parties appear to agree that no additional period of revocation can now be imposed. The only issue which prevents this question from being totally moot is the Appellant's attendance of the safety and treatment program and the obviously most significant issue of whether the Appellant will have a DUI revocation on his record.[6] Upon remand, the video, if it

---

6. A DUI revocation has serious implications. Pursuant to West Virginia Code § 17C–5A–2(i)

can be located, should be reviewed by the hearing examiner and he should re-issue his decision after considering it and all the other evidence previously submitted.

Reversed and remanded.

(1993), upon finding, by a preponderance of the evidence, that an individual drove a motor vehicle while under the influence of alcohol, the commissioner shall revoke the individual's license for six months. If, however, the commissioner had previously suspended or revoked the person's license within ten years immediately preceding the date of arrest, the period of revocation shall be ten years. If the commissioner had previously suspended or revoked the person's license more than once within the ten years immediately preceding the arrest, the period of revocation shall be for the life of such person.