518 S.E.2d 74

STATE of West Virginia ex rel. Melvin
W. KAHLE, Jr., Prosecuting Attorney
for Ohio County, Petitioner,

v.

Honorable Fred RISOVICH, II, Judge of
the Circuit Court of Ohio County,
and Leroy Brown, Respondents.

No. 25889.

Supreme Court of Appeals of
West Virginia.

Submitted June 1, 1999.

Decided June 18, 1999.

Stephen M. Kenney, Robert G. McCoid, Assistant Prosecuting Attorneys, Ohio County Prosecuting Attorney's Office, Wheeling, West Virginia, Attorneys for the Petitioner.

Jack Wood, Assistant Public Defender, First Judicial Circuit Public Defender Corporation, Wheeling, West Virginia, Attorney for Respondent Brown.

PER CURIAM:

The petitioner herein, Melvin W. Kahle, Jr., Prosecuting Attorney for Ohio County [hereinafter "Prosecutor Kahle"], requests this Court to issue a writ of prohibition to prevent the respondent herein, the Honorable Fred Risovich, II,[1] from enforcing an order of the Circuit Court of Ohio County, entered February 9, 1999, which awarded the second respondent herein, Leroy Brown [hereinafter "Brown"], a new trial. Brown's request for a new trial resulted from his discovery of a police report containing newly-discovered evidence, which was allegedly exculpatory and impeachment evidence, which Prosecutor Kahle had not disclosed to him in response to his earlier request for all such statements. Upon a review of the parties' pleadings and the pertinent authorities, we conclude that the circuit court abused its discretion in awarding Brown a new trial based upon newly-discovered evidence because the utility of such evidence was limited to impeachment purposes and because Brown's constitutional rights were not violated by Prosecutor Kahle's failure to disclose this evidence. Thus, we grant as moulded the writ of prohibition, with directions to the Circuit Court of Ohio County to proceed with the execution of the sentences it imposed upon Brown following his convictions by jury trial.

I.

## FACTUAL AND PROCEDURAL HISTORY

On April 16, 1998, an Ohio County jury found Brown guilty of two counts of first degree sexual assault[2] and one count of first degree sexual abuse[3] involving his step-daughter, A.R.,[4] who was six years old at the time the offenses were committed in 1996 and 1997. The circuit court subsequently sentenced Brown for his three convictions to an aggregate sentence of thirty-one to seventy-five years' imprisonment in the West Virginia State Penitentiary.

Following his trial, Brown moved for a new trial, which motion was denied during his sentencing hearing on May 7, 1998. Also during this hearing, Brown discovered that Prosecutor Kahle had failed to disclose to him a police report, dated June 19, 1997, describing the investigation of the criminal charges against Brown, which allegedly contained potentially exculpatory and impeachment evidence and newly-discovered evidence.[5] This statement, which was included in Brown's pre-sentence report, revealed that his son, Edgar Brown [hereinafter "Edgar"],[6] who was a principal State's witness in Brown's criminal trial, had described his observation of the sexual assault differently to

1. Although Judge Risovich is the respondent in this proceeding, he did not enter the order contested herein. The Honorable Martin J. Gaughan, Chief Judge of the First Judicial Circuit, which encompasses the Circuit Court of Ohio County, presided over the criminal trial of Leroy Brown and awarded him a new trial based upon newly-discovered evidence. This new trial was then assigned to Judge Risovich through the method of case assignment and rotation followed in that circuit.

2. First degree sexual assault, as the crime was charged in the indictment, contemplates a "person, being fourteen years old or more, [who] engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less." W. Va.Code § 61–8B–3(a)(2) (1991) (Repl. Vol.1997).

3. The pertinent definition of first degree sexual abuse provides that "[a] person is guilty of sexual abuse in the first degree when: ... [s]uch person, being fourteen years old or more, subjects another person to sexual contact who is eleven years old or less." W. Va.Code § 61–8B–7(a)(3)

(1984) (Repl.Vol.1997). Although Brown had initially been charged with two counts of first degree sexual abuse, the trial court dismissed one of these counts finding that the State had failed to prove such offense.

4. Considering the nature of the crimes committed and the tender age of the victim of these crimes, we adhere to our prior practice of using initials, rather than full names, in cases involving sensitive matters. See State ex rel. Paul B. v. Hill, 201 W.Va. 248, 250 n. 1, 496 S.E.2d 198, 200 n. 1 (1997); In Interest of Tiffany Marie S., 196 W.Va. 223, 226 n. 1, 470 S.E.2d 177, 180 n. 1 (1996).

5. Brown represents that, before the commencement of his criminal trial, he requested of Prosecutor Kahle evidence held by the State, including police reports, that contained potentially exculpatory evidence.

6. Edgar was twelve years old at the time he spoke with the investigating officer and fourteen years old when he testified at Brown's criminal trial.

the investigating officer than he had during his trial testimony. More specifically, Edgar testified at trial that he had seen *Brown on top of A.R.* at the time of the sexual assault incident. By contrast, the police report recorded Edgar's observation to be that *A.R. was on top of Brown* at the time of Brown's misconduct. In addition, the police report contained new information, previously unknown to Brown, that Edgar had given his stepsister candy to encourage her to tell him about the sexual abuse and assault episode(s). Based on this newly-discovered evidence, Brown orally renewed his motion for a new trial.

By order entered February 9, 1999, the circuit court granted Brown's request for a new trial. The court observed:

> It is clear from the record in this case including the pre-sentence report and the police reports turned over to the Court that the State failed to provide the defendant with summaries of Statements made by the State's witness, Edgar Brown. On June 19, 1997, Detective Barry took a Statement from Edgar Brown, the defendant's son. The most significant part of the Statement, as written out by Detective Barry, was, "I walked into my father's bedroom and I seen my father lying on the bed with [A.R.] on top of him. They were Frenching and [A.R.] was moving back and forth. What do you mean by Frenching and back and forth? They were kissing, I seen my father putting his tongue in [A.R.]'s mouth. She was moving back and forth, he made a motion as to moving in a sliding motion. Were they dressed? No, they both had their clothes off." Later in the report the following appears. "[A.R.] also told me what my father was doing. I would give her candy and she would tell me more each time!" The defendant maintains that other parts of the Statement are of importance, but the Court is of the opinion that the balance of this Statement can only be used to generally impeach the credibility of Edgar Brown and would not justify the granting of a new trial whether

the evidence was improperly suppressed or not.

. . . .

> [A]t trial Edgar testified ". . . I saw him on top of [A.R.] . . . she was lying down with her legs spread . . . on top of her . . ."[.]
>
> The trial testimony is . . . factually very different from the detailed statement Edgar Brown gave to Detective Barry on June 19, 1997.
>
> During the trial there was no testimony that Edgar Brown gave his stepsister candy to get more information from her about the alleged sexual abuse.

Discussing the factors to be considered in awarding a new trial, *see* Syl. pt. 1, *State v. Crouch,* 191 W.Va. 272, 445 S.E.2d 213 (1994),[7] the circuit court concluded that

> the effective use of the suppressed evidence ought to produce a different outcome because the candy for information testimony not only buttresses the defendant's theory of false memories, it also impeaches the State's position that the victim was only interviewed twice before she talked of sexual abuse. The impeachment of Edgar Brown based on his dislike of his father would have been materially strengthened by the use of his prior inconsistent Statement based on his observations of the defendant engaging in sexual acts with the victim.
>
> The only really close call is on the requirement that a new trial should generally not be granted when the sole object of the new evidence is to discredit or impeach a witness for the other side. The Court agrees that this is generally the case. But here the impeachment is not solely to discredit or impeach the witness but rather is offered to specifically impeach the verbal testimony that he offered with a prior inconsistent Statement bearing on the exact same subject matter. It is not only his credibility but also the accurateness of his observation that is being attacked. Unlike many of the cases that previously held that new impeachment testimony generally will not be the basis of a new trial, this is not an attack on his honesty or whether he

---

7. *See infra* Sections II and III for a discussion of the five factors to be considered by a circuit court in awarding a new trial based upon newly-discovered evidence.

was present or elsewhere. This is an attack on his ability to accurately testify to what he allegedly saw.

. . . .

After watching the jury during Edgar Brown's eyewitness testimony of the specific sexual acts, this Court was of the opinion that the defendant would be found guilty. All other evidence offered by the State paled in comparison to the detailed description. Edgar Brown's testimony clearly identified his father as the abuser. After that testimony, there was never any doubt that the defendant would be convicted.

. . . .

This Court can only conclude that had the questioned evidence been properly disclosed by the State that the result of the trial would have been different. This Court has no confidence that the jury would have convicted the defendant of the charges had all of the evidence been presented to them.

From this ruling of the circuit court, Prosecutor Kahle petitions this Court for a writ of prohibition to prevent the circuit court from conducting a new trial on the criminal charges against Brown for the sexual abuse and assault of his stepdaughter.

## II.

## STANDARD OF REVIEW

▇ Two specific standards of review govern the case *sub judice* concerning the propriety of a writ of prohibition in this Court and the authority of a circuit court to grant a new trial based upon newly-discovered evidence in a criminal case. First, the instant petition for writ of prohibition is presented by Prosecutor Kahle, on behalf of the State of West Virginia. In certain, enumerated circumstances, the State may properly petition this Court for prohibitory relief.

"The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syllabus Point 5, *State v. Lewis*, 188 W.Va. 85, 422 S.E.2d 807 (1992).

Syl. pt. 2, *State ex rel. Forbes v. Canady*, 197 W.Va. 37, 475 S.E.2d 37 (1996).

▇ Second, the subject of this writ is the propriety of the circuit court's order awarding the defendant below, Brown, a new criminal trial based upon newly-discovered evidence.

" 'A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) [The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) ] And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' Syllabus, *State v. Frazier*, 162 W.Va. [9]35, 235 [253] S.E.2d 534 (1979), *quoting*, Syl. pt. 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894)[, *overruled in part, on other grounds, by State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955) ]. Syl. Pt. 1, *State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984) [ (per curiam) ]." Syl. Pt. 1, *State v. O'Donnell*, 189 W.Va. 628, 433 S.E.2d 566 (1993).

Syl. pt. 1, *State v. Crouch*, 191 W.Va. 272, 445 S.E.2d 213 (1994). *Accord* Syl. pt. 5, *State v. Kennedy*, 205 W.Va. 224, 517 S.E.2d 457

(1999). *See also* Syl. pt. 9, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966) ("A new trial on the ground of after-discovered evidence or newly-discovered evidence is very seldom granted and the circumstances must be unusual or special."). Generally, once a circuit court has considered these criteria and deemed a defendant to be entitled to a new trial based upon newly-discovered evidence, we accord great deference to the lower court's ruling. "A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." Syl. pt. 3, in part, *In re State Pub. Bldg. Asbestos Litig.*, 193 W.Va. 119, 454 S.E.2d 413 (1994). *See also State v. Crouch*, 191 W.Va. at 275, 445 S.E.2d at 216 ("The question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse." (citation omitted)). To determine whether such an abuse has occurred, it is necessary to review the factors the circuit court was required to consider in rendering its decision. "In general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them." *Gentry v. Mangum*, 195 W.Va. 512, 520 n. 6, 466 S.E.2d 171, 179 n. 6 (1995). *See also Bartles v. Hinkle*, 196 W.Va. 381, 389, 472 S.E.2d 827, 835 (1996) ("A trial court abuses its discretion if its ruling is based on an erroneous assessment of the evidence or the law." (citation omitted)); *Gribben v. Kirk*, 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995) ("Under the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances."). With these principles in mind, we proceed to determine whether the requested writ of prohibition should issue.

## III.

## DISCUSSION

In his petition for a writ of prohibition, Prosecutor Kahle complains that the circuit court erred by awarding Brown a new trial on the basis of newly-discovered evidence because such evidence is primarily impeachment evidence, upon which new trials are rarely granted. Brown responds by contending that he was entitled to a new trial because the police report withheld by Prosecutor Kahle contains not just impeachment evidence but potentially exculpatory material, the denial of which constitutes a violation of his due process rights. Thus it appears that the question presented by this writ is twofold: (1) was Brown entitled to a new trial based upon newly-discovered evidence and (2) did the report contain exculpatory evidence such that its nondisclosure transgressed Brown's constitutional rights to due process.

■ A new trial based upon newly-discovered evidence is typically warranted when (1) the evidence was discovered after the trial, and the party finding such evidence is able to proffer the contents of such evidence or explain its absence from the trial; (2) it can be shown that due diligence has been used to discover the new evidence, and due diligence would not have disclosed such evidence prior to its post-trial discovery; (3) the evidence is "new and material"; and (4) such new evidence, if it was presented at a new trial, would produce a contrary result on the merits. Syl. pt. 1, in part, *State v. Crouch*, 191 W.Va. 272, 445 S.E.2d 213 (internal quotations and citations omitted). However, a new trial will not be granted based upon newly-discovered evidence if the primary purpose of the new evidence is "to discredit or impeach a witness on the opposite side." *Id.* (internal quotations and citations omitted).

■ Having reviewed the facts and circumstances presented to the circuit court in conjunction with Brown's motion for a new trial, we are not convinced that the four requisite factors enumerated above were sufficiently satisfied so as to warrant the award of a new trial. While it is apparent that the police report at issue was discovered by Brown after the conclusion of his criminal trial; that he employed due diligence in eliciting the report; and that such evidence was, in fact, new and material to the issue of his guilt or innocence, we do not believe that the

information contained in this report was so compelling as to be capable of producing a different result at a new trial of Brown's criminal indictments for sexual assault and abuse. In other words, the evidence contained in the police report which had not earlier been disclosed to Brown, *i.e.*, the discrepancy in the positioning of Brown's and the victim's bodies and Edgar's alleged exchange of candy with A.R. for information about the incident(s), was not so crucial to Brown's case as to warrant a verdict of not guilty upon a retrial. Rather, we find such evidence to be either pure impeachment, at best, or quite incriminating, at worst.

Brown suggests that this evidence was crucial to his defense in that it placed into question Edgar's veracity as a witness and bolstered his theory that A.R. had false memories that Brown was the actual perpetrator of these heinous acts. What is omitted in this characterization of the police report, though, is the fact that, during a new trial of the criminal charges against Brown, this evidence could not be presented in an isolated vacuum so that the jury would receive only the inferences favorable to Brown and would not be privy to the damaging deductions to be drawn therefrom. Objectively viewing this evidence, we find Edgar's statement regarding the positioning of Brown and his alleged victim to be very incriminating. While this statement is inconsistent with Edgar's trial testimony describing the precise placement of the individuals, it nevertheless places Brown at the scene of the crime in a rather compromising situation with his then six-year-old stepdaughter. *See State v. Kerns*, 187 W.Va. 620, 629–30, 420 S.E.2d 891, 900–01 (1992) (refusing to find evidence that had been withheld by State to be exculpatory where it merely showed inconsistency in testimony of State's witness and, thus, refusing to find reversible error on this basis).

Furthermore, it is questionable whether Brown could employ the reference to the candy-for-story exchange in the manner in which he proposes as Edgar did not testify, on either direct or cross-examination, about his prior discussions with his stepsister regarding the allegations of sexual assault and abuse. Likewise, it is not apparent from the appendices presented in conjunction with the petition and response herein whether Edgar has ever adopted this statement as his own or attested to its accurate and truthful recordation, which fact further questions its utility. From the evidence presented for our review, we are convinced that the introduction of this police statement, with the placement of particular emphasis upon the inconsistent positioning of Brown and A .R. and the candy-for-story exchange, would not have produced a different result at a new trial of these charges. The record before us indicates that there was sufficient evidence, including testimony regarding A.R.'s physical and psychological condition, upon which to base Brown's three convictions and that the jury so found during its deliberations. Thus, Brown was not entitled to a new trial based upon newly-discovered evidence as the newly-discovered evidence was impeachment evidence, with inculpatory, rather than exculpatory, value.

▓▓▓▓ Neither do we conclude that Brown's due process rights [8] were violated by the State's failure to disclose the police report. In order to find that a defendant's constitutional rights have been violated by the failure to disclose evidence, so as to entitle him/her to a new trial, such evidence must have been exculpatory in nature. " 'A prosecution that withholds evidence which if made available would tend to *exculpate* an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia

---

8. The right to due process is guaranteed in this State by Article III, Section 10 of the West Virginia Constitution, which provides: "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." In the context of criminal proceedings, due process requires that

the accused shall be fully and plainly informed of the character and cause of the accusation,

and be confronted with the witness against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.

W.Va. Const. art. III, § 14.

Constitution.' Syl. pt. 4, *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982)." Syl. pt. 4, *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998) (emphasis added). *Accord* Syl. pt. 4, *State v. Kennedy*, 205 W.Va. 224, 517 S.E.2d 457 (1999). *See also* Syl. pt. 4, *State v. McArdle*, 156 W.Va. 409, 194 S.E.2d 174 (1973) ("A prosecution that withholds evidence on the demand of an accused, which, if made available would tend to *exculpate* him, violates due process of law." (emphasis added)), *modified, State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402.

■■■■■ Once a determination has been made that a withholding of evidence favorable to the accused has occurred, he/she is entitled to a new trial only when such evidentiary denial rises to the level of reversible error.

> "[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial."

*State v. Salmons*, 203 W.Va. at 572, 509 S.E.2d at 853 (quoting *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342, 355 (1976) (footnote omitted)) (additional citation omitted). *See also* Syl. pt. 6, *State v. Kerns*, 187 W.Va. 620, 420 S.E.2d 891 (" ' "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." ' *State v. Fortner*, 182 W.Va. 345, 353, 387 S.E.2d 812, 820 (1989) [ (footnote omitted) ], *quoting United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985).").

As we explained above with regard to the factors to be considered in awarding a new trial on the basis of newly-discovered evidence, we cannot conclude that Brown's constitutional rights have been violated by Prosecutor Kahle's failure to earlier divulge the police report containing Edgar's statements to the investigating officer. First, such statements are not exculpatory. Second, given the overwhelming evidence presented at trial, we are convinced that the introduction of the statements contained in the police report would not have created a reasonable doubt as to Brown's guilt or resulted in a verdict of acquittal. Therefore, Brown was not entitled to a new trial based upon Prosecutor Kahle's failure to disclose the police report as such evidence was not exculpatory and would not have led to a different result in the trial of Brown's criminal charges.[9]

## IV.

## CONCLUSION

In conclusion, we find that the circuit court abused its discretion in awarding Brown a new trial based upon newly-discovered evidence. Because the circuit court "abused its legitimate powers," the State was "deprived of a valid conviction," Syl. pt. 2, in part, *State ex rel. Forbes v. Canady*, 197 W.Va. 37, 475 S.E.2d 37 (internal quotations and citations omitted), and was therefore entitled to relief in this Court by way of a writ of prohibition. Accordingly, the writ of prohibition is granted as moulded with directions to the Circuit Court of Ohio County to proceed with the execution of the sentences it imposed upon Brown following his convictions by jury trial.

Writ granted as moulded.

---

9. By our ruling today, however, we in no way condone Prosecutor Kahle's failure to surrender the police report at issue herein in response to Brown's discovery request for such evidence. *See State v. Ward*, 188 W.Va. 380, 392, 424 S.E.2d 725, 737 (1991) (finding no reversible error from circuit court's refusal of new trial based upon newly-discovered evidence, but cautioning that "this decision in no way indicates that the state's failure to give complete discovery is excusable, nor does it indicate that this Court will countenance failure on the part of the state to provide a defendant with all exculpatory evidence").