IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

No. 12-0512

**FILED**

**February 10, 2014**
released at 3:00 p.m.
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

JOHN EUGENE ANDERSON,
Defendant Below, Petitioner

Appeal from the Circuit Court of Wood County
The Honorable Robert A. Waters
Case No. 10-F-93

AFFIRMED

Submitted:  January 15, 2014
Filed:  February 10, 2014

Joseph Munoz, Esq.
Parkersburg, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Benjamin F. Yancey III, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

2.      "'In a criminal case, the inquiry made of a jury on its *voir dire* is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused.' Syl. pt. 2, *State v. Beacraft*, 126 W. Va. 895, 30 S.E.2d 541 (1944)." Syl. Pt. 2, *State v. Mayle*, 178 W. Va. 26, 357 S.E.2d 219 (1987).

3.      "When a trial court determines that prospective jurors have been exposed to information which may be prejudicial, the trial court, upon its own motion or motion of counsel, shall question or permit the questioning of the prospective jurors individually, out of the presence of the other prospective jurors, to ascertain whether the prospective jurors remain free of bias or prejudice." Syl. Pt. 1, *State v. Finley*, 177 W. Va. 554, 355 S.E.2d 47 (1987).

4.      "The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure

i

involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syl. Pt. 2, *State ex rel. Rusen v. Hill*, 193 W. Va. 133, 454 S.E.2d 427 (1994).

5.      "Under the 'in the possession of' language of Rule 26.2[] of the West Virginia Rules of Criminal Procedure, a prosecutor is required to disclose statements to which he has access even though he does not have the present physical possession of the statements." Syl. Pt. 5, *State v. Watson*, 173 W. Va. 553, 318 S.E.2d 603 (1984).

6.      "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

Per Curiam:

John Eugene Anderson (hereinafter "petitioner") appeals the Circuit Court of Wood County's March 12, 2012, order denying his motion for judgment of acquittal, or alternatively, motion for a new trial arising out of his conviction of first degree murder, for which he was sentenced to life in prison with mercy. Petitioner alleges that the trial court erred by: 1) allowing a contaminated pool of jurors to be empaneled; 2) permitting a witness to testify when neither his full criminal history nor a prior written statement was produced by the State; and 3) refusing to allow the defense to introduce evidence of the victim's sex offender status. Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court committed no reversible error and therefore affirm petitioner's conviction.

## I. FACTS AND PROCEDURAL HISTORY

In the early morning hours of March 24, 2010, the body of 69-year-old Willard Wright (hereinafter "Mr. Wright") was found in his apartment at 910 Ann Street, Parkersburg, West Virginia. The State Medical Examiner determined that Mr. Wright's death was a homicide and that he died as a result of multiple sharp force injuries leading

1

to exsanguination;[1] in particular, Mr. Wright suffered from multiple stab wounds, the most significant of which was a long neck wound which severed his jugular veins and nearly decapitated him.

At trial, the State introduced evidence that on the afternoon of March 23, 2010, petitioner, his girlfriend, Tammy Wilfong (hereinafter "Ms. Wilfong"), and Ms. Wilfong's four-year-old daughter, visited Mr. Wright, who was nearly bedridden, at his home and assisted him with household chores; Ms. Wilfong is Mr. Wright's niece. Apparently, during the course of the visit, Ms. Wilfong's daughter advised her mother that Mr. Wright, who was a registered sex offender, had licked her ear. The testimony revealed that later that evening, petitioner borrowed a bicycle and cell phone from two different acquaintances and went to the home of Dorothy Metz where he asked her to accompany him to a home on Ann Street to pick up some money. When Ms. Metz asked how he was going to get the money, he replied "Well, if you must know, I'm going up here to kill this elderly man and take his money."

The State called a litany of witnesses inculpating petitioner in the crime including two acquaintances of Ms. Wilfong who picked petitioner up late that night near the crime scene. Megyn Rollyson (hereinafter "Ms. Rollyson") and Derek Zimmerman (hereinafter "Mr. Zimmerman") testified that upon picking up petitioner and the

---

[1] Exsanguination is a medical term for fatal bleeding; Mr. Wright lost nearly the entirety of his body's blood volume as a result of his injuries.

2

borrowed bicycle near the scene, petitioner directed them to take him back to 910 Ann Street to retrieve the borrowed cell phone, which he had left there. While there, Mr. Zimmerman testified he was told to serve as a "look out" while petitioner retrieved the cell phone, which he later told them had been "under a dead body." When Ms. Rollyson inquired if anyone was in the home at 910 Ann Street, petitioner replied, "No one that's alive." Ms. Rollyson and Mr. Zimmerman further testified that after they left the scene, they observed petitioner with the bloody cell phone, a bloody knife, and a black wallet matching Mr. Wright's wallet which was ultimately recovered in a storm drain near the scene. Ms. Rollyson and Mr. Zimmerman further observed petitioner changing clothes and trying to clean the bloody items when they returned to Ms. Wilfong's apartment. Ms. Wilfong testified that, upon returning to her apartment, petitioner told her that he had killed her uncle and that her "baby would be safe now."

In addition to the witnesses who testified to petitioner's actions immediately before and after the crime, the State called James Claypool (hereinafter "Mr. Claypool"), who was housed with petitioner in the Washington (Ohio) County Jail after petitioner was arrested. Mr. Claypool, who was being held on federal charges stemming from his role as an "enforcer" in the Pagans motorcycle gang, testified that while he was

housed with petitioner, petitioner confessed to the crime[2] and asked Mr. Claypool if he could "take care of" some of the witnesses who would testify against him.

Trial began on January 3, 2012 and at the close of the six-day trial, the jury returned a verdict of guilty of first degree murder; the same jury recommended mercy to the court. Petitioner moved for a judgment of acquittal or new trial asserting the same errors raised in this appeal. The trial court denied the motion and sentenced petitioner to life in prison with mercy on March 12, 2012. This appeal followed.

## II. STANDARD OF REVIEW

Generally,

[i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Additional standards of review as pertain to the specific assignments of error are incorporated as appropriate in the discussion below.

---

[2] Mr. Claypool testified that petitioner told him that "this guy [Wright] put his hands on my daughter. . . . Now they're accusing me of killing him." When Claypool asked if he did it, petitioner replied, "F*ck, yeah, I did it. He had it coming."

# III. DISCUSSION

Petitioner asserts that the trial court erred by 1) allowing a jury to be empaneled from a venire which had been contaminated by a prospective juror's prejudicial remarks; 2) permitting Mr. Claypool to testify when neither his full criminal history nor a prior written statement was produced by the State; and 3) refusing to allow the defense to introduce evidence of Mr. Wright's sex offender status.

## A.     Contamination of the Venire

During *voir dire*, prospective juror Sarah Markell advised the trial court in chambers that she overheard a juror, later identified as Jennie Ankrom (hereinafter "Ms. Ankrom"), remark that petitioner "just looks guilty" while standing in the hallway with "half a dozen" other prospective jurors whom she could not identify. Upon individual questioning, Ms. Ankrom admitted that she remarked that petitioner "just looks guilty, looks like my ex-husband." However, Ms. Ankrom stated that she made the remark to only one other prospective juror, later identified as Matthew Minton (hereinafter "Mr. Minton"), when walking from the parking lot to the courtroom. During individual *voir dire*, Mr. Minton confirmed that Ms. Ankrom made an inappropriate comment, which he could not specifically recall and immediately disregarded. After individually questioning these prospective jurors[3] and based upon Ms. Markell's indication that the comment was

---

[3] Ms. Ankrom was excused as a result of her remarks; Ms. Markell and Mr. Minton agreed that the remark was inappropriate and stated that it would not affect their
(continued . . .)

5

made in the presence of other jurors, the trial court inquired of the entire panel in open court regarding whether they heard a "female juror ma[ke] a remark regarding the Defendant." Petitioner did not object to the trial court's questioning the panel in open court, nor did he request individual questioning of the remaining members of the venire on this issue. No one other than Ms. Markell and Mr. Minton acknowledged hearing the remark.[4] At the close of *voir dire*, petitioner moved for a mistrial, which the trial court denied.

---

ability to serve as impartial jurors. Mr. Minton, in fact, ultimately sat on the jury which convicted petitioner.

[4] The trial court inquired as follows:

> During our period of time with you jurors, there came an issue as to one of the jurors may not have followed the instructions given by the Court not to discuss the case among yourself. Apparently, one female juror made a remark regarding the Defendant and apparently some of you heard it and some of you did not hear it. Is there anyone who knows what I'm referring to and heard a remark directed at the Defendant by one of your fellow jurors? Okay. We've already talked to you about that. Anyone else? We also talked to one other juror, yes. So we had two jurors heard that remark. Does anyone else know what we're referring to or heard the remark? We don't want to say what the remark was, but it was inappropriate. If a juror did make a comment, would anybody be biased just because of an opinion of a prospective juror? And that juror is no longer on the jury panel, but that juror has been excused. If such a remark was heard or is made, do you understand you're to base a verdict solely on the evidence represented and the law as given to you by the court?

On appeal, petitioner claims that the trial court's manner of questioning the venire as a group regarding whether they heard Ms. Ankrom's remark was erroneous and essentially "chilled" the jurors from admitting to having heard the remark. Petitioner argues that it is simply incredible that none of the jurors overheard the remark since Ms. Markell said there were half a dozen jurors nearby; therefore, they were not forthright during *voir dire*. Petitioner contends that the court should have conducted individual *voir dire* of all of the remaining jurors as to whether they heard the remark. The State contends that the trial court was entitled to rely on the sworn responses of the jurors indicating they did not hear Ms. Ankrom's remark, thereby obviating the need for further individual *voir dire*. The State further argues that there was nothing about the trial court's comments concerning the matter that would make the jurors apprehensive about advising the court they had heard the remarks.

With respect to the more specific standard of review as pertains to jury *voir dire*, this Court has held that, "'[i]n a criminal case, the inquiry made of a jury on its *voir dire* is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused.' Syl. pt. 2, *State v. Beacraft*, 126 W. Va. 895, 30 S.E.2d 541 (1944)." Syl. Pt. 2, *State v. Mayle*, 178 W. Va. 26, 357 S.E.2d 219 (1987). With respect to prejudicial remarks made by a prospective juror during *voir dire*, we have more specifically held:

> [w]hen a trial court determines that prospective jurors have been exposed to information which may be prejudicial, the trial court, upon its own motion or motion of counsel, shall

> question or permit the questioning of the prospective jurors individually, out of the presence of the other prospective jurors, to ascertain whether the prospective jurors remain free of bias or prejudice.

Syl. Pt. 1, *State v. Finley*, 177 W. Va. 554, 355 S.E.2d 47 (1987).

We find that the trial court properly utilized the *Finley* procedure to address the potential exposure of the venire to the inappropriate remarks. The trial court properly struck the juror who made the remark and individually questioned jurors *known* to have heard the remark. To ascertain which jurors were actually "exposed" to the remark, as instructed by *Finley*, the trial court innocuously inquired as to whether the remainder of the panel even heard the unidentified remark to determine if further individual *voir dire* was needed. In short, there is simply no evidence that any additional jurors heard the remark at all, much less were prejudiced by Ms. Ankrom's mere expression of opinion about petitioner's guilt. As the State notes, it is possible that any prospective jurors who may have heard the remark had been excused by the time the trial court inquired of the panel. It is equally plausible that the jurors simply did not overhear the remark despite being in Ms. Ankrom's general vicinity. Moreover, the State further notes that one specifically identifiable individual who heard the remark, Mr. Minton, was actually left on the jury by petitioner. *See also State v. Neider,* 170 W. Va. 662, 295 S.E.2d 902 (1982) (finding no error where sworn veniremen who had read newspaper article about a

8

jail break indicated they could be unbiased).[5] We therefore find that the trial court did not abuse its discretion in its handling of the potential prejudice to the venire.

B.      *Criminal History and Prior Statement of James Claypool*

Petitioner's next two assignments of error concern witness James Claypool, who testified to petitioner's admission of guilt shortly after his arrest and petitioner's request that Mr. Claypool assist him in "taking care of" certain witnesses against him. Petitioner contends that the trial court erred in not requiring the State to 1) provide a complete criminal history of Mr. Claypool; and 2) obtain and produce a letter written by Mr. Claypool to his attorney.

i.  Criminal History of Claypool; W.V.R. Crim. P. 16(a)(1)(F)

---

[5] Extra-jurisdictional caselaw on this precise issue indicates that most courts have held that mere occurrence of prejudicial remarks during *voir dire* does not necessarily require quashing of the entire panel. *See U. S. v. Pantone*, 609 F.2d 675 (3d Cir. 1979) (finding no error where trial court refused mistrial after juror stated "it sounds like everybody is guilty" during *voir dire*); *U. S. v. Morrone*, 502 F. Supp. 983 (E.D. Pa. 1980) (finding that corrective *voir dire* revealed no prejudice after venireman stated "it looks like the Mafia is here"); *State v. Ziel,* 495 A.2d 1050 (Conn. 1985) (finding no error where venire expressed no prejudice or bias after overhearing other veniremen discussing news reports and express opinions during *voir dire*); *Bauta v. State,* 698 So.2d 860 (Fl. Ct. App. 1997) (no error where corrective *voir dire* revealed no prejudice to venire after venireperson's emotional outburst during *voir dire*); *Beasley v. State,* 74 So.3d 357 (Miss. Ct. App. 2010) (same); *State v. Stewart*, 296 S.W.3d 5 (Mo. Ct. App. 2009) (quashing entire venire not warranted where venireperson remarked on prior knowledge of defendant during *voir dire*); *State v. Greathouse*, 694 S.W.2d 903, 909 (Mo. Ct. App. 1985) ("Even if a venireman makes a broadly judgmental statement about the cause or a derogatory remark about the defendant, a mistrial or discharge of the panel is not automatically required.").

9

Mr. Claypool testified that, at the time he was housed with petitioner, he had entered into a plea agreement with the United States Attorney in 2009 to plead guilty to a single felony charge of obstructing justice with bodily injury in exchange for additional charges being dropped, but had not yet been sentenced. Before testimony began, petitioner brought to the trial court's attention the fact that he had not been provided an up to date and accurate criminal history of Mr. Claypool. Petitioner asserted, and the State agreed, that the history provided by the State showed only a misdemeanor charge in 2006 and had not been updated to reflect the felony plea agreement into which Mr. Claypool had entered in 2009. Nonetheless, the trial court found that Mr. Claypool had testified to the felony plea at the preliminary hearing in 2010 and that he would be available for further cross-examination on the issue during the in camera hearing pursuant to West Virginia Rule of Evidence 404(b)[6] which it would conduct prior to his testimony.

During the 404(b) hearing and during his testimony before the jury, Mr. Claypool testified to his felony conviction and further testified that he made no agreement with the State or federal authorities in exchange for his testimony in the case. After the 404(b) hearing, the defense renewed its objection to Mr. Claypool's testimony arguing that it still did not have a "full" criminal history of Mr. Claypool. The court

---

[6] The State contended that Mr. Claypool's testimony was not, in fact, Rule 404(b) evidence, but rather, was a continuation of the crime and evidence of consciousness of guilt. Regardless, the trial court held an in camera hearing prior to allowing Mr. Claypool to testify and found his testimony admissible.

overruled the defense's objection, stating that the defense could only impeach Mr. Claypool on felony convictions and the defense was well aware of the felony conviction. Following Mr. Claypool's testimony, the defense moved for a mistrial based on the failure to provide the complete criminal history.

Petitioner argues that the State committed a discovery violation entitling him to a new trial. Petitioner argues, essentially, that there was no way to know if Mr. Claypool was being truthful about any post-2006 convictions or whether his testimony that he had been promised no lenity was accurate. Petitioner also argues that Mr. Claypool may have agreed to provide "substantial cooperation" for purposes of sentencing and that without more complete information from the State, he could not further investigate that issue. The State counters that it provided the defense with the information it had and that the defense was on notice of, and had opportunity to investigate, the additional felony conviction that did not appear on the report. On appeal, the State argues that a simple PACER search would have provided petitioner with any additional information regarding the conviction.[7]

This assignment of error arises out of the State's duty of disclosure pursuant to West Virginia Rule of Criminal Procedure 16(a)(1)(F), as follows:

> (a) Disclosure of Evidence by the State.—
>     (1) Information Subject to Disclosure.—

---

[7] PACER is the federal court system's case management software, available to subscribing users to search the federal docket and its contents.

11

* * *

> (F) State Witnesses.—Upon request of the defendant, the state shall furnish to the defendant a written list of names and addresses of all state witnesses whom the attorney for the state intends to call in the presentation of the case in chief, *together with any record of prior convictions of any such witnesses which is within the knowledge of the state*. When a request for discovery of the names and addresses of witnesses has been made by the defendant, the state may be allowed to perpetuate the testimony of such witnesses in accordance with the provisions of Rule 15.

(emphasis added). To determine if a violation of this Rule entitles a defendant to a new trial, this Court has held:

> The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case.

Syl. Pt. 2, *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994).

This Court has previously addressed this specific issue in *State v. Adkins*, 223 W.Va. 838, 679 S.E.2d 670 (2009). In *Adkins*, the State provided a criminal history of a confidential informant which consisted of a pre-sentencing report and a CIB report; neither of these documents contained a complete and accurate history. 223 W. Va. at 840, 679 S.E.2d at 672. After Adkins' conviction, the defense requested another updated criminal history which revealed a far more extensive criminal history, much of which included crimes of dishonesty. *Id.* at 841, 679 S.E.2d at 673. The Court found that the

12

complete criminal history was, in fact, a surprise to the defense and the lack of this information hampered the defendant's ability to thoroughly cross-examine the State's key witness. *Id.* at 843, 679 S.E.2d at 675.

Unlike *Adkins*, however, in the instant case, there is no evidence of a discovery violation in the first instance. Petitioner has failed to demonstrate that Mr. Claypool had additional convictions of which he did not have knowledge and, more importantly, of which the State did have knowledge. Rule 16(a)(1)(F) requires only that the State produce a "record of prior convictions . . . within the knowledge of the state." It does not require the State to investigate convictions of which the defense has knowledge to provide additional information such as whether the witness made any deal with the federal government. The State represented that it had made no such promise of lenity and did not withhold any record of conviction within its knowledge. Petitioner is essentially asking this Court to speculate about non-existent additional convictions or information relative to known convictions that he failed to investigate. We therefore find no discovery violation which would entitle petitioner to a new trial.

### ii. Prior Statement of Claypool; W.V.R. Crim. P. 26.2

Petitioner also contends that the trial court committed reversible error by failing to require the State to produce a letter written by Mr. Claypool to his lawyer. Mr. Claypool, after having the inculpatory conversations with petitioner, wrote his lawyer a letter advising him of same. His lawyer then apparently notified authorities, culminating

13

in the authorities taking a recorded statement of Mr. Claypool; this recorded statement was provided to petitioner's counsel. At trial, however, petitioner contended that the State was under an obligation, pursuant to West Virginia Rule of Criminal Procedure 26.2, to obtain and produce the letter Mr. Claypool wrote to his attorney. The State claimed it did not possess, nor have access to, the letter; the trial court agreed.[8] Petitioner claims on appeal that this violation is tantamount to a violation of *Brady v. Maryland,* 373 U.S. 83 (1963) (requiring disclosure by the government of exculpatory or impeachment evidence).[9]

> West Virginia Rule of Criminal Procedure 26.2 provides, in part:
>
> (a) *Motion for production.*— After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney, as the case may be, to produce for the examination and use of the moving party *any statement of the witness that is in their possession* and that relates to the subject matter concerning which the witness has testified.

(emphasis added). This Court has held that "[u]nder the 'in the possession of' language of Rule 26.2[] of the West Virginia Rules of Criminal Procedure, a prosecutor is required to disclose statements to which he has access even though he does not have the present

---

[8] The State further made claims that such letter would be attorney-client privileged; petitioner countered that any privilege had been effectively waived by the recorded statement and subsequent testimony of Mr. Claypool.

[9] The interplay between Rule 26.2 and *Brady* has been the discussion of much federal jurisprudence, none of which appears relevant given the State's lack of access to the letter, discussed *infra.*

physical possession of the statements." Syl. Pt. 5, *State v. Watson*, 173 W. Va. 553, 318 S.E.2d 603 (1984). The documents at issue in *Watson* were grand jury transcripts.

More akin to the issue as presented herein is *State v. Kerns*, 187 W. Va. 620, 420 S.E.2d 891 (1992). In *Kerns*, the defendant claimed that the State was obligated to produce a statement taken by a private investigator for purposes of a civil action which preceded the criminal case. 187 W. Va. at 626, 420 S.E.2d at 897. The investigator who took the statement was eventually hired by the special prosecutor in the subsequent criminal investigation. 187 W. Va. at 627, 420 S.E.2d at 898. Nonetheless, the Court found that the State did not have access to, and therefore was not in possession of, the statement; therefore, no Rule 26.2 violation occurred. *Id.*

We likewise find no violation of Rule 26.2 in the instant case. We find it difficult to surmise how a letter presumably in possession of a witness' attorney could be deemed to be "in the possession of" the State. "Access to" has been given common-sensical treatment and found typically where the statement is possessed by some sort of instrumentality or agency of the government to which a prosecutor would naturally have "access."[10] As such, we find that the trial court did not err in refusing to find a violation of West Virginia Rule of Criminal Procedure 26.2.

---

[10] *See U.S. v. Trevino,* 556 F.2d 1265, 1272 (5th Cir. 1977) ("Certainly the prosecutor would not be allowed to avoid disclosure of evidence by the simple expedient (continued . . .)

15

Finally, petitioner asserts that the trial court erred in refusing to allow him to introduce evidence that Mr. Wright was a registered sex offender. At trial, the State orally moved *in limine* to prevent any reference to Mr. Wright being a sex offender on relevancy grounds. Petitioner objected, arguing that Mr. Wright's sex offender status may establish motive for a third party to have committed the murder. In particular, the defense indicated that given the incident involving Ms. Wilfong's daughter the day before the murder, Ms. Wilfong herself would be a viable suspect and that such evidence should be admissible. The trial court granted the State's motion, ruling that such evidence was neither relevant nor material.[11] In addition to potentially establishing motive for a third person suspect, petitioner also briefly argued that Mr. Wright's status as a sex offender may serve as "provocation" and therefore lend itself to arguing lesser included offenses. The trial court found that "provocation" was a self-defense principle and was inapplicable to petitioner's defense. On appeal, petitioner appears to have settled on the latter argument, contending that the evidence was relevant to establishing lesser-included offenses, although he does not identify how this evidence would warrant a lesser-included offense under the facts and circumstances presented herein. Petitioner

---

of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial[.]").

[11] The defense renewed their objection on the second day of trial, during the testimony of Ms. Wilfong, and again during their motion for judgment of acquittal at the close of the State's case.

cites to Syllabus Point 4 of *State v. Harden*, 223 W. Va. 796, 679 S.E.2d 628 (2009)[12] in support of his contention that Mr. Wright's sex offender status may have served to negate intent or malice.

This Court has held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). We find that the trial court properly excluded evidence of Mr. Wright's sex offender status. As observed by the trial court, at no time did petitioner advance a "self-defense" or "heat of passion"-type defense. Certainly, the evidence adduced at trial indicated that Mr. Wright was killed hours after the alleged encounter with Ms. Wilfong's daughter. Rather, in so many words, petitioner (a sex offender himself) appears to argue simply that Mr. Wright's sex offender status essentially "justified" his murder. As such, the trial court correctly found the evidence inadmissible.

---

[12] "Where it is determined that the defendant's actions were not reasonably made in self-defense, evidence that the decedent had abused or threatened the life of the defendant is nonetheless relevant and may negate or tend to negate a necessary element of the offense(s) charged, such as malice or intent." *Id.*

## IV. CONCLUSION

Based upon the foregoing, the Circuit Court of Wood County's March 12, 2012, order is affirmed.

Affirmed.

18