# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia**
**Plaintiff Below, Respondent**

**vs)  No. 14-1139** (Monroe County 13-F-77)

**Bonnie Sue Hopkins**
**Defendant Below, Petitioner**

**FILED**

November 23, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Bonnie Hopkins, by counsel Paul S. Detch, appeals her June 5, 2014, jury conviction for the felony offense of child abuse by a parent resulting in bodily injury. Respondent State of West Virginia ("State"), by counsel David Stackpole, responds in support of the circuit court's order, to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 10, 2013, petitioner was indicted by the Monroe County Grand Jury for the offense of child abuse by a parent resulting in bodily injury in violation of West Virginia Code § 61-8D-3(a). The indictment arose from a June 18, 2013, incident wherein petitioner disciplined her eleven-year-old son, R.T.,[1] by striking him with a "switch."[2] On June 19, 2013, R.T. reported to the director of the daycare he attended that several marks on his back were tender, and that he was in pain. The director examined R.T.'s back and found the same covered in bruises. R.T. advised the director that his injuries were the result of petitioner's striking him with the switch.

The daycare director promptly reported R.T.'s injuries to police and Child Protective Services ("CPS"). Within hours of the report, a CPS worker and Corporal Sidney Keaton (a West Virginia State Police officer), traveled to the daycare to view R.T.'s injuries, and complete

---

[1]R.T. suffers from attention-deficit/hyperactivity disorder (ADHD) and Aspergers syndrome. R.T. is the half-sibling of petitioner's biological grandchildren, and was adopted by petitioner.

[2]The switch at issue was a branch from a lilac bush.

1

interviews of R.T. and his siblings.[3] That same day, petitioner met with Corporal Keaton and, after being advised of her rights, voluntarily provided a recorded statement.[4] In her statement, petitioner acknowledged that she, in a June 18, 2013, act of discipline, struck R.T. with a switch on his back and buttocks.[5]

A jury trial was held on June 5, 2014, and petitioner was found guilty of child abuse resulting in injury. At trial, petitioner introduced the testimony of two men who were doing construction work at her residence on June 15, 2013. These men testified that on June 15, 2013, they observed R.T. twice overturn a go-cart he was driving, resulting in R.T. landing on his back, in or near a rosebush (or similar brush). After being shown photographs of R.T.'s injuries, the men testified that the photographs depicted an injury to the same area of R.T.'s body that was impacted in the go-cart accidents, and that the accidents were of "sufficient" violence or force to have created the types of marks depicted in the photographs. However, under cross-examination, these workers testified that they did not personally observe any injuries to R.T. following the go-cart accidents, did not render aid to R.T. following the accidents, and were not aware that R.T. had been struck by a switch the day before the photographs they were shown at trial. In fact, one of the workers admitted that the injuries depicted in the photographs they were shown at trial could possibly have come from a "whipping with a switch."

Petitioner made no mention of the go-cart accidents prior to trial. Petitioner testified that she did not learn of the go-cart accident until after she provided her recorded statement to Corporal Keaton. However, she further testified that she did not advise Corporal Keaton, or CPS, of the occurrence of the go-cart accidents after learning of the same, based on the advice of her counsel.

---

[3]During his June 19, 2013, interview of R.T., Corporal Keaton took a series of photographs of R.T.'s injuries, which were admitted into evidence at trial.

[4]Prior to providing a statement to Corporal Keaton, petitioner was advised of her rights, under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), and endorsed an *Interview & Miranda Rights Form*, wherein she waived those rights. There is no dispute in the record that petitioner's statement was voluntarily made. A recording of the statement was played during trial, at which time petitioner's counsel acknowledged, "[y]our Honor, we've been provided with a copy of that statement. And I've reviewed it with my client. And to my knowledge, it was freely and voluntarily given. And we have no objection to its being introduced."

[5]In June of 2013, following R.T.'s report of injury, the West Virginia Department of Health and Human Resources ("DHHR") filed an abuse and neglect petition against petitioner. As a result, R.T. and his siblings were removed from petitioner's home. Ultimately petitioner's parental rights as to R.T., and his siblings, were terminated by the Monroe County Circuit Court. Petitioner appealed the termination of her parental rights to this Court in case Nos. 15-0675 and 15-0676. In a memorandum decision issued November 23, 2015, the termination of petitioner's parental rights was affirmed.

2

In September of 2014, petitioner was sentenced to probation for a period of one year. It is from her June 5, 2014, conviction that petitioner now appeals. On appeal, petitioner asserts three assignments of error. First, petitioner contends that the circuit court erred in permitting the admission of evidence regarding her post arrest silence. Second, petitioner argues that the circuit court erred in allowing expert testimony from a police officer. Third, petitioner alleges that in failing to give the jury instructions she submitted, the circuit court committed error.

In her first assignment of error, petitioner alleges that the circuit court erred in permitting the State to use her post-arrest silence against her several times throughout trial. The first five instances came during the trial testimony of Corporal Keaton. During direct examination, the State asked Corporal Keaton if, since petitioner's recorded statement was taken, petitioner or "anyone advised you or contacted you or informed you in any fashion that those injuries on young [R.T.'s] back could be from a [go-cart] accident?" Petitioner's counsel objected, on the basis of hearsay, which was overruled.[6] The State then asked Corporal Keaton "[w]hen was the first time that you heard about the go-cart possibility of the injuries being from a go-cart accident?" to which Corporal Keaton replied "[j]ust a few minutes ago when [petitioner's counsel] stated speaking about it." Petitioner's counsel made no objection to this statement or question at trial. The next instance came in response to Corporal Keaton's statement that ". . . if I was in the middle of a CPS investigation, a law enforcement investigation, and she [petitioner] knew that that's how he received these injuries, according to her from a go-cart wreck, I think that I would have informed CPS and law enforcement of that real quick." There was no objection from petitioner's counsel as to this statement from Corporal Keaton.

In the next series of questions posed to Corporal Keaton on cross-examination, petitioner's counsel asked him if "[petitioner] told her lawyer about it and he chose not to do it [advise police or CPS of the go-cart accidents], then who's to blame?" The State objected, arguing that Corporal Keaton's response called for speculation. The circuit court sustained the objection. Petitioner's counsel then asked for the "jury to be instructed that the fact that [petitioner] remained silent and didn't volunteer this should not be interpreted against her." The State objected and argued that petitioner had waived her right to remain silent in completing the *Interview & Miranda Rights Form*, prior to her June 19, 2013, statement to Corporal Keaton. The circuit court sustained the State's objection but advised petitioner that "[w]e'll give any instruction that you want offer [on this issue]. I'll give it at the appropriate time." There is no indication in the record that petitioner offered any instruction on this issue. Petitioner references two other statements made by Corporal Keaton during his direct testimony regarding the fact that he was not advised of the go-cart accidents by anyone, prior to trial. Again, there was no contemporaneous objection made by petitioner's counsel as to these referenced statements.

Petitioner then references a number of instances, during her cross-examination, in which she was asked by the State if she told any law enforcement officers about the go-cart wreck, to which petitioner responded, "no." Petitioner's counsel objected arguing that his client "had a right to remain silent. She had counsel." The State responded by arguing that petitioner waived

---

[6]In her brief, petitioner asserts that, although what she may have learned from witnesses who would testify regarding the go-cart accidents was hearsay, hearsay was not the real basis of her objection.

3

her right to remain silent, to which petitioner's counsel responded, "[o]h, come on." Petitioner's objection was overruled. Lastly, petitioner references testimony offered by CPS worker Tammy Smith, in which Ms. Smith responded to the State's questions that she was never told by petitioner (at a multidisciplinary team meeting ("MDT") or otherwise) that R.T.'s injuries allegedly resulted from a go-cart accident. Petitioner's counsel made no objections to these particular questions.

In syllabus point one of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), we held that

> [u]nder the Due Process Clause of the *West Virginia Constitution*, Article III, Section 10, and the presumption of innocence embodied therein, and Article, III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.

We have further held that "[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State v. Flippo*, 212 W.Va. 560, 575 S.E.2d 170 (2002) (citations omitted).

Petitioner argues that in permitting the State to comment on her post-arrest silence, the circuit court violated petitioner's constitutional right to remain silent. We disagree. An examination of the record reveals that prior to submitting to her recorded statement on June 19, 2013, petitioner was advised of her rights and properly executed an *Interview & Miranda Rights Form.* At trial, petitioner's counsel admitted that petitioner's June 19, 2013, statement was voluntarily given and made no objection to the introduction of the statement as evidence at the trial.[7] In this statement, petitioner made no mention of the go-cart accident. We further note in response to petitioner's request for "the jury to be instructed that the fact that [petitioner] remained silent and didn't volunteer this should not be interpreted against her," that the circuit court advised petitioner that "[w]e'll give any instruction that you want offer [on this issue]. I'll give it at the appropriate time." There is no indication in the record that petitioner offered any instruction on this issue.

In any event, any error that may have occurred was harmless. At petitioner's trial, her recorded statement, wherein she admitted to striking R.T., with a switch, made no reference to the go-cart accident, and was played for the jury with no objection from her counsel. Based on our review, we cannot conclude that questions directed to any witness regarding petitioner's mention of the go-cart accident warrant reversal of petitioner's conviction.

In her second assignment of error, petitioner argues that the circuit court erred in permitting Corporal Keaton to testify as an expert as to the cause, severity, and intent relating to the visible wounds which he observed on R.T.'s back on June 18, 2013. We have held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to

---

[7]An audio recording of petitioner's statement was played (multiple times) during trial.

review under an abuse of discretion standard." Syl. Pt. 6, *State v. Anderson*, 233 W.Va. 75, 754 S.E.2d 761 (2014) (quoting Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1988)). In syllabus point eight of *State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974), we held the "[t]he question of the competency of a witness to testify is left largely to the discretion of the trial court and its judgment will not be disturbed unless shown to have been plainly abused resulting in manifest error."

Petitioner argues that the circuit court erred in permitting Corporal Keaton to testify as an "expert" as to the cause, severity and intent as to the wounds he observed upon R.T.'s back. Petitioner cites Rule 701 of the West Virginia Rules of Evidence which provides that, if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness perception, (b) helpful to clearly understand the witnesses testimony or to determine a fact in issue and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 (i.e., Corporal Keaton cannot incorporate R.T.'s statement to him as a conclusion of his investigation). Conversely, the State argues that Corporal Keaton did not testify as an expert, but testified regarding matters within his personal knowledge. We agree.

Per Rule 602 of the West Virginia Rules of Evidence, all witnesses can testify to matters within their personal knowledge. Based upon our review of the record, we find that to the extent that Corporal Keaton gave any opinions, his opinions were rationally based on his perception, were helpful to clearly understand his testimony or determine a fact in issue, and were not based on any scientific, technical, or other specialized knowledge. Moreover, we note that many of the "opinions" Corporal Keaton expressed were given in response to petitioner's request on cross-examination. Accordingly, we find that that the circuit court did not abuse its discretion in permitting Corporal Keaton's testimony.

Next, petitioner argues that the circuit court erred in failing to give her four proposed jury instructions. In syllabus point six of *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995), we held, as follows:

> [t]he formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

We will address each of petitioner's proposed instructions individually. The first instruction read "[t]he Court instructs the jury that the failure of the State to call [R.T.], available material witness, gives rise to the inference that [R.T.] testified, his testimony would have been adverse to the State's case." Petitioner argues that it was not until trial that she learned that the State did not intend to call R.T., as a trial witness. Petitioner argues that had she been able to use this instruction, she would have had at least one tool to counter the testimony of Corporal Keaton. The State argues the petitioner's first proposed instruction is not a correct statement of law. Petitioner's proposed instruction required an inference to be made that a witness' testimony would have been adverse to the State. There was no finding that the State was unjustified in not

5

calling R.T. The State chose not to call R.T. because he was a child with mental disabilities. Petitioner has cited no law that requires the State to call witnesses just so petitioner could elicit testimony from them. Petitioner had a mechanism to obtain the witness and chose not to do so.

Petitioner's second proposed instruction read

[t]he jury is instructed that nothing in the West Virginia child abuse code "shall preclude a parent, guardian, or custodian from providing reasonable discipline to a child." This definition of "reasonable discipline" to a child is not further defined and must be construed against the State and in favor of the defendant.

The State argues, and we agree, that the jury was properly instructed regarding the elements of the crime of child abuse by a parent.

The third proposed instruction read "[b]odily injury prohibited by statute "means substantial physical pain, illness, or other impairment of physical condition."" Proposed instruction number four read

[t]he jury is instructed that the State . . . has introduced certain photographs of the alleged victim purported to show various marks upon the victim's body. The Court instructs the jury that you are not to assume that the marks on the victim are in anyway [sic] associated with the discipline of the defendant. The burden of proof is upon the State to prove beyond a reasonable doubt that the alleged wounds or marks on the infant as shown in this photograph or were caused by the defendant.

With regard to these proposed instructions, the State argues, and we agree, that petitioner's proposed jury instructions three and four would have been redundant and potentially confusing to the jury in light of the other instructions given to the jury. Based upon our review of the record, we find that the jury was properly instructed on these issues and find no abuse of discretion in the circuit court's refusing petitioner's proposed jury instructions.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 23, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

6