# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

State of West Virginia,
Petitioner Below, Respondent

**FILED**

**January 27, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **No. 15-1196** (Webster County 15-F-15)

Mishell Rose Fidler,
Defendant Below, Petitioner

## MEMORANDUM DECISION

Petitioner Mishell Rose Fidler, by counsel Scott E. Johnson, appeals her convictions on charges of conspiracy to deliver a controlled substance and possession with intent to deliver a controlled substance in the Circuit Court of Webster County. The State of West Virginia, by counsel Benjamin F. Yancey, III, filed a response. Petitioner submitted a reply brief.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2015, petitioner resided in an apartment with her co-defendant, Alan Jordan ("co-defendant"), in Webster County, West Virginia. On January 16, 2015, the co-defendant filled his prescription for Ritalin, a Schedule II narcotic drug. The following day, State Police Officer Trooper Bostic and Chief Allen Cogar of the Cowen Police Department met with a confidential informant ("CI") for the purpose of purchasing controlled substances. Trooper Bostic gave the CI $101 in bills that had been photographed and recorded. That same day, the CI entered petitioner's apartment and met with petitioner and her co-defendant. While inside the apartment, the CI purchased ten Ritalin pills. The CI then returned to Trooper Bostic, and gave him the pills.

Thereafter, Trooper Bostic and Chief Cogar went to petitioner's apartment and knocked on the door. Trooper Bostic informed petitioner and her co-defendant that he believed drug activity was taking place in the apartment and that he wanted to speak with them. The officers were granted entry into the apartment, and patted down petitioner and the co-defendant for officer safety. It was during this pat-down that Trooper Bostic found the $101 in the waistband of petitioner's pants. After the pat-down, the officers obtained a written consent to search the apartment from petitioner. Inside the apartment, the officers found a pill bottle for Ritalin with the co-defendant's name on it. The pills were similar to those provided to the CI.

1

Petitioner was indicted by the Webster County Grand Jury in May of 2015, and charged with delivery of a controlled substance, conspiracy to deliver a controlled substance, and possession with intent to deliver a controlled substance. In pretrial motions, petitioner moved to suppress the introduction of the currency found during the officer's search. Following a pretrial hearing, the trial court found that the currency was discovered pursuant to "a permissible safety frisk by officers," and ruled that the evidence was admissible.

The trial court conducted individual voir dire of twenty potential jurors. During the voir dire, the trial court granted four challenges for cause, and called four additional members to the jury panel. The trial court then conducted general voir dire of the additional members, and permitted the State and petitioner's counsel to inquire of the panel. Petitioner's counsel asked,

> [A]nd to the new members, do you have any reason why, or any reason at all, that you could not sit on this case here today, that may go into tomorrow? You will be able to listen to the evidence—and anything that may cause you not to be able to devote your full attention to this case?

In response, one new potential juror raised his hand.[1] Although petitioner's counsel then requested individual voir dire of that juror, the court denied the request. The parties then conducted their peremptory challenges. The juror who raised his hand served on the jury panel.

Following voir dire, petitioner's counsel objected on the record that he should have been granted individual voir dire of the juror who raised his hand. The trial court responded,

> Well, first of all, voir dire [is] solely in the discretion of the Court. Second of all, you requested – I gave you individual voir dire in regards to the initial panel. In my opinion, the four new members of the panel, did not give any answer to my – in my opinion, that warranted any individual voir dire. And your objections are noted.

At trial, petitioner's co-defendant and the CI testified that petitioner gave the drugs to the CI. The co-defendant also testified that petitioner told the CI that petitioner and her co-defendant had Ritalin pills, and that petitioner personally gave the Ritalin to the CI. Trooper Bostic testified to the $101found on petitioner's person. Petitioner did not testify or call any witnesses at trial. The trial court thereafter granted petitioner's Motion for Judgment of Acquittal as to the offense of delivery of a controlled substance. The jury found petitioner guilty of the offenses of conspiracy to deliver and possession with intent to deliver a controlled substance, and petitioner was sentenced to two consecutive terms of one to five years in the penitentiary. Petitioner now appeals her convictions.

Petitioner first argues that the trial court erred in preventing individual voir dire of the juror who, petitioner claims, indicated that he could not "fully pay attention" at trial. Petitioner

---

[1]The record does not identify the juror who raised his hand. It is clear that he is one of two male jurors who were re-seated after the initial jurors were dismissed. Both jurors ultimately served on the jury panel.

argues that when a juror may not be capable of devoting full attention to a case, the juror is unqualified and should be struck for cause. Petitioner thus asserts that when there is a question of whether a juror can properly focus on a case and be attentive to the law and instructions, it is the trial court's duty to either strike the juror or to engage in a thorough and searching voir dire to determine if the juror can devote his or her undivided attention to the case. Regarding voir dire, this Court has held,

> "'In a criminal case, the inquiry made of a jury on its *voir dire* is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused.' Syl. pt. 2, *State v. Beacraft,* 126 W.Va. 895, 30 S.E.2d 541 (1944)." Syl. Pt. 2, *State v. Mayle,* 178 W.Va. 26, 357 S.E.2d 219 (1987).

Syl. Pt. 2, *State v. Anderson*, 233 W. Va. 75, 754 S.E.2d 761 (2014). In addition, we have held that,

> [t]he object of jury selection is to secure jurors who are not only free from improper prejudice and bias, but who are also free from the suspicion of improper prejudice or bias. *Voir dire* ferrets out biases and prejudices to create a jury panel, before the exercise of preemptory strikes, free of the taint of reasonably suspected prejudice or bias. Trial courts have an obligation to strike biased or prejudiced jurors for cause.

*O'Dell v. Miller*, 211 W. Va. 285, 288, 565 S.E.2d 407, 410 (2002).

Upon our review of the record, we find that petitioner has failed to show that the trial court abused its discretion in preventing further voir dire of the juror. The object of jury selection is to secure jurors who are free from improper prejudice or bias. Here, petitioner's counsel was permitted the opportunity to conduct a voir dire examination. As a part of that examination counsel asked a compound question: (1) was there any reason that a juror could not sit on the case that may last longer than one day, and (2) would the juror be able to listen to the evidence. It is not clear from the record which part of the question triggered the subject juror to raise his hand. The trial lasted one day. Petitioner does not contend that he suspected that the subject juror harbored improper bias or prejudice, or that further voir dire would ferret out the same. See *id*. Thus, we cannot conclude that the trial court clearly abused its discretion in denying petitioner the opportunity to conduct additional voir dire.

Petitioner next asserts that the trial court erred in admitting the $101 in currency seized from petitioner's person. "The Fourth Amendment of the *United States Constitution*, and Article III, Section 6 of the *West Virginia Constitution* protect an individual's reasonable expectation of privacy." Syl. Pt. 7, *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981) (emphasis added). In addition, we have held that,

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because

it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 107, 468 S.E.2d 719, 722 (1996).

Syl. Pt. 2, *State v. Payne*, ___ W.Va. ___, ___ S.E.2d. ___, No. 15-0289, 2016 WL 6135396, at *1 (W. Va. Oct. 19, 2016).

The trial court found that the currency seized from petitioner was discovered as a result of a permissible safety frisk. Giving proper deference to the findings of the circuit court, we find no error. Based upon the information available to officers at the time of the frisk, it is clear that the officer acted lawfully in conducting the safety frisk. We have held that "[a] brief investigative stop is . . . permissible whenever the police officer has a reasonable suspicion grounded in specific and articulable facts that the person he stopped has been or is about to be involved in a crime." *State v. Choat*, 178 W. Va. 607, 611, 363 S.E.2d 493, 497 (1987). "'[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.' *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968)." *State v. Matthew David S.*, 205 W. Va. 392, 396, 518 S.E.2d 396, 400 (1999). Further,

> [i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* (citing *Minnesota v. Dickerson*, 508 U.S. 366 (1993). Here, the officer's search of petitioner's person and seizure of the currency were non-intrusive means that were "necessary in the circumstances to ensure the suspect . . . [was] not armed." *David*, 205 W. Va. at 397, 518 S.E.2d at 401. Accordingly, viewed in the light most favorable to the State, we find that the trial court did not err in admitting this evidence at trial.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 27, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4

**DISSENTING:**

Justice Robin Jean Davis