# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 14-0400** (Jefferson County 13-F-81)

**Carletta Antoinette Watson,**
**Defendant Below, Petitioner**

**FILED**

May 21, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Carletta Antoinette Watson, by counsel Nicholas Forrest Colvin, Esq., appeals the March 7, 2014, order of the Circuit Court of Jefferson County denying her motion for judgment of acquittal/motion for a new trial arising out of her conviction of first degree felony murder of Dontrell Curry, first degree robbery, burglary, and conspiracy to commit both first degree burglary and first degree robbery. Upon the jury's failure to recommend mercy, petitioner was sentenced to life in the penitentiary without the possibility of parole. The State, by counsel Brandon C. H. Sims, Esq., filed a response to petitioner's appeal.

This Court has considered the parties' briefs, oral argument, and the record on appeal. Upon careful review, this Court finds no substantial question of law and, after consideration of the applicable standards of review and the record presented, we find no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Petitioner, originally from Baltimore, Maryland, and her girlfriend moved in with Rachel Cooke (hereinafter "Ms. Cooke"), Ms. Cooke's four children and Ms. Cooke's boyfriend, Dontrell Curry (hereinafter "Mr. Curry"), at the Apple Tree Gardens Apartments in Ranson, West Virginia, in April, 2012. Shortly after petitioner and her girlfriend moved into Ms. Cooke's apartment, Ms. Cooke obtained a back child support check in the amount of approximately $6,000.00; petitioner arranged for Ms. Cooke to have the check cashed in Frederick, Maryland. The check-cashing service gave Ms. Cooke two pre-paid credit cards, three money orders, and cash. Shortly thereafter, Ms. Cooke used "a lot" of the money and in fact gave petitioner $600 to "help her out to get her back on her feet."

It appears undisputed that while residing at the Apple Tree Gardens Apartments petitioner sold crack cocaine and that the complex was her "biggest moneymaker."[1] On April 24, 2012, Ms. Cooke advised petitioner that the apartment was getting too "hot" and that they should go their

---

[1] Ms. Cooke testified, however, that petitioner refused to sell her drugs, rather, encouraging her to get "clean."

separate ways. Petitioner returned her key to the apartment and Ms. Cooke maintained that they parted on good terms.

In the early morning hours of April 25, 2012, petitioner and two unknown, masked men entered Ms. Cooke's apartment; the gunmen held her and Mr. Curry at gunpoint while two of Ms. Cooke's children slept nearby. Ms. Cooke testified that she saw the "unmistakable" hair and body shape of petitioner in the kitchen area of her apartment while being forced down the hallway where the gunmen demanded the pre-paid credit cards and PIN numbers. Mr. Curry provided the PIN numbers, but apparently moved to protect Ms. Cooke, whereupon he was shot twice by the gunmen at close range and died as a result of his injuries. Ms. Cooke was shot in the arm, which she was using to shield her face.

Based upon the identification provided by Ms. Cooke, the police apprehended petitioner, who gave a *Mirandized* statement denying that she participated in the crime. After extradition, while represented by counsel, petitioner agreed to give another statement to police and identify the gunmen in exchange for a surety bond. During this statement, petitioner admitted that she returned to the apartment with the two gunmen, who had never been to West Virginia, "to get money" and that she fled after the shooting, but met back up with the gunmen to travel back to Baltimore. She admitted that while traveling back to Baltimore, she called the 1-866 numbers on the pre-paid credit cards to check the balances. Petitioner gave no specific identities of the gunmen, giving only vague descriptions and referencing one as "Midge." Petitioner's statement was corroborated by cell phone records which tracked the movement of petitioner's phone from Baltimore to Ranson and back at or around the time of the murder, as well as confirmed the calls to the credit card numbers.

Petitioner was indicted on charges of felony murder, first degree robbery, first degree burglary, and conspiracy to commit burglary and robbery. Petitioner moved to suppress use of the two statements, arguing that she was essentially "duped" into providing them under the "false promise" that the State would agree to a surety, instead of cash, bond. The State contended, and the circuit court agreed, that petitioner had not provided the information agreed as a condition of the surety bond and continued to deny modification of her bond, as well as the motion to suppress. Also at pretrial, the State provided notice of intent to use evidence that petitioner was selling crack cocaine from Ms. Cooke's apartment, but argued that it was part of the *res gestae* of the crime and therefore did not necessitate a hearing pursuant to West Virginia Rule of Evidence 404(b).

At the close of the three-day trial, the jury returned a verdict of guilty of first degree felony murder, first degree robbery, burglary, conspiracy to commit burglary and first degree robbery; the same jury recommended no mercy to the circuit court. Petitioner moved for a judgment of acquittal/new trial, which was denied, asserting the same errors she raises on appeal. The circuit court sentenced petitioner to life in prison without mercy. This appeal followed.

Generally,

> [i]n reviewing challenges to findings and rulings made by a
> circuit court, we apply a two-pronged deferential standard of

2

review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).  Additional standards of review as pertain to the specific assigned errors are incorporated below.

Petitioner makes six assignments of error as follows:  1) the evidence was insufficient to support a conviction; 2) the circuit court erred in admitting statements of petitioner; 3) the circuit court erred by failing to hold a hearing pursuant to West Virginia Rule of Evidence 404(b); 4) the evidence was insufficient to support a finding of "no mercy"; 5) the circuit court erred in refusing to allow evidence of decedent's alleged drug dealing; and 6) the circuit court improperly instructed the jury.  For the reasons set forth below, we conclude that there was no reversible error.

Petitioner focuses most of her argument on her first assignment of error—insufficiency of evidence.  Petitioner contends that since Ms. Cooke gave her money from and access to the pre-paid credit cards while she was living at the apartment, she had no incentive to orchestrate or participate in a robbery.  She argues heavily that since she "never pulled the trigger . . . did not have a weapon of any kind . . . provided no instruction to the two masked men . . . [and] received no proceeds from the offense," she was "[a]t most . . . a witness to a crime with no duty to interfere."

> This Court has held that
>
> > [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).  Obviously, petitioner's knowledge of Ms. Cooke's possession of the pre-paid credit cards was the foundation upon which this crime was orchestrated.  There is no other connection between the two gunmen, who petitioner said had never been to West Virginia, and Mr. Curry and Ms. Cooke other than petitioner, who admitted she traveled from Baltimore with the gunmen and was present at the scene.  Petitioner admitted that after being ousted by Ms. Cooke, she returned to "get money" and then called the 1-866 numbers on the pre-paid credit cards to check balances.  It is fairly absurd to characterize petitioner's involvement in this matter as a mere "bystander."  Petitioner had a full opportunity to argue the lack of motive to the jury, which, like the circuit court, plainly found it

"implausible." For these reasons, we find that the evidence presented was more than adequate to support petitioner's convictions.

Petitioner next argues that her statements to law enforcement were "not voluntary and coerced" and were therefore improperly admitted. Although petitioner mentions the initial custodial statement wherein she denied participation in the crime,[2] her focus appears to be the second statement which was given in exchange for the State agreeing to convert her cash bond into a surety bond. The agreement was memorialized in an Agreed Order which specifically stated

> The state will agree to a reduction in the Defendant's bond amount from $100,000 cash only, to $100,000 Surety only, and in exchange the Defendant will waive his [sic] right to preliminary hearing. Further, the Defendant has agreed that she will be debrief [sic] by Ranson City Police; provide complete information about the incident, *including the names of the other unknown males present in the home at the time of the incident, as well as the name of the actual shooter*; and the Defendant will be supervised on bond by GPS monitoring.

(emphasis added). Petitioner argues that she was lured into providing this statement with the promise of a surety bond, but then denied the benefit of her bargain because her statement was deemed "unreliable" by the State. It is undisputed, however, that upon interview petitioner did not provide an actual name of either of the two gunmen, providing only a street name of one of the gunmen. Moreover, petitioner was represented by counsel while giving the interview. As a result, the circuit court refused to modify her bond and permitted use of the statement at trial.

This Court has held that

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996). Moreover, "[w]hen evaluating the voluntariness of a confession, a determination must be made as to whether the defendant knowingly and intelligently waived his constitutional rights and whether the confession was the

---

[2] It is undisputed that petitioner was read her *Miranda* rights and signed a waiver of those rights before this statement was given. *See Miranda v. Arizona*, 384 U.S. 436, (1966). Accordingly, the circuit court found this statement voluntary and admissible.

4

product of an essentially free and unconstrained choice by its maker." Syl. Pt. 7, *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995).

While this Court has recognized that "any inculpatory evidence obtained by way of promises of leniency are not admissible against a defendant," we decline to characterize the offer of modification of a bond from cash to surety as a "promise[] of leniency." *State v. Hanson,* 181 W.Va. 353, 359, 382 S.E.2d 547, 553 (1989) (quoting *Myers v. Frazier*, 173 W.Va. 658, 678 n.37, 319 S.E.2d 782, 803 n.37 (1984)). It is well-recognized that "[a] confession induced by a promise of a collateral benefits, with no assurance of benefit to the accused with respect to the crime under inquiry, generally will be deemed voluntary and admissible[.]" 23 C.J.S. Criminal Law § 1250. *See also U. S. v. Ferrara,* 377 F.2d 16 (2nd Cir. 1967) (holding that statement was not involuntary where agent told defendant if he cooperated, he was sure his bond would be reduced); *State v. Church*, 315 S.E.2d 331, 333 (N. C. Ct. App. 1984) (recognizing that "'any improper inducement generating hope must promise relief from the criminal charge to which the confession relates, not to any merely collateral advantage.'" (citations omitted)).

The circuit court properly found that petitioner simply did not fulfill her end of the bargain by refusing to provide the names of the gunmen; there was no "false promise" made by the State, no offer of leniency, and therefore no coercion. In a similar vein, the circuit court further properly rejected the petitioner's argument that, since the State deemed the statement "unreliable," it should not be permitted to use it at trial. The State, however, did not contend that the statement was unreliable, but rather, *incomplete,* as it did not include the names of the gunmen. Virtually all aspects of the substance of petitioner's statement were independently corroborated by witnesses and cell phone records. We therefore find no error in admission of the statements.

Petitioner next argues that evidence that she was a drug dealer was improperly admitted under West Virginia Rule of Evidence 404(b) without a *McGinnis*[3] hearing. The State argued,

---

[3] Syllabus Point 2 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994) provides:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the

and the circuit court agreed, that petitioner's status as a drug dealer was intrinsic evidence and therefore not subject to a *McGinnis* hearing. This Court has recently reiterated that:

> In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990): "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits into the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980) (stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is ... appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae"'"). (Citations omitted).

*State v. Bowling*, 232 W.Va. 529, 546-47, 753 S.E.2d 27, 44-45 (2013) (quoting *State v. LaRock*, 196 W.Va. 294, 312 n. 29, 470 S.E.2d 613, 631 n. 29 (1996)). Further, "[e]vents, declarations and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial." Syl. Pt. 3, *State v. Ferguson*, 165 W.Va. 529, 270 S.E.2d 166 (1980), *overruled on other grounds by State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983).

As the circuit court properly observed, petitioner's status as a drug dealer was an integral part of the State's theory of the case, *i.e.* that having been kicked out of the apartment complex which she claimed was her "biggest moneymaker," she returned to rob Ms. Cooke of her pre-paid credit cards. More importantly, however, petitioner herself admitted to dealing drugs and advanced a defense which likewise made use of this fact, *i.e.* that she and Ms. Cooke were in a mutually beneficial drug-dealing business venture and therefore petitioner had no motive to rob her.[4] We therefore find that petitioner's drug dealing was part of the res gestae of the crime and

> West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

[4] Petitioner's counsel further made much of the fact that despite being a drug-dealer, petitioner

therefore did not necessitate a hearing pursuant to West Virginia Rule of Evidence 404(b) and *McGinnis*.

Petitioner's next assignment of error accuses the jury of being a "'runaway jury' bent on ignoring the rules of evidence and the rule of Law to exact their own peculiar vision of Justice" because it recommended no mercy. It is well-established that "under both statutory and case law, the recommendation of mercy in a first degree murder case lies solely in the discretion of the jury." *State v. Triplett*, 187 W.Va. 760, 769, 421 S.E.2d 511, 520 (1992); *see also State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987); W. Va. Code § 62-3-15 (1994).

To whatever extent a "no mercy" recommendation may even be challenged on sufficiency of the evidence, it is clear that the jury found that petitioner repaid Ms. Cooke for her loan of money and a place to stay by returning in the dead of night with two armed gunmen to rob her while two of her small children, whom petitioner had previously babysat, slept nearby. Both Mr. Curry and Ms. Cooke were shot mere feet from where Ms. Cooke's 9-year-old son was lying in bed witnessing the entire occurrence.[5] We therefore find no error in the jury's recommendation of no mercy.

Petitioner next argues that the trial court erroneously precluded her from introducing evidence that Mr. Curry, the murder victim, was a drug dealer. Petitioner asserts that if she were permitted to introduce evidence of Mr. Curry's drug dealing, that "it could have been adduced at Trial that the reason for the shooting was . . . a killing between Dontrell Curry and out-of-towners precipitated by drug dealing not on Carletta's part."

This Court has held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). The trial court here properly noted that 1) there was no evidence presented to support petitioner's claim that Mr. Curry was a drug "dealer" as opposed to a drug "user"[6]; and 2) Mr. Curry's status as a purported "drug dealer" was irrelevant and prejudicial pursuant to West Virginia Rules of Evidence 401 and 403.[7] Moreover, petitioner proffered no evidence in support of his alleged theory that "out-of-towners" murdered Mr. Curry as a result of his drug dealing. *See State v. Anderson*, 233 W.Va. 75, 754 S.E.2d 761 (2014) (upholding circuit court's refusal to admit evidence that victim was a sex offender). We

---

would not sell drugs to Ms. Cooke, as ostensible evidence of their friendship and therefore, lack of motive. *See* n.1, *supra*.

[5] Petitioner also had an extensive criminal history of felony convictions involving non-violent offenses.

[6] Mr. Curry apparently had pending drug charges, but no convictions consistent with distribution.

[7] Petitioner does not argue that this evidence was admissible as a character trait of the victim for purposes of establishing self-defense. *See* W.V.R.E. 404(a)(2).

therefore find no abuse of discretion in the circuit court's refusal to permit petitioner to introduce evidence of the victim's alleged drug dealing.

Finally, petitioner argues that the circuit court erred in using the term "co-conspirator" in the felony murder instructions. Because petitioner was accused of being a principal in the second degree, the instructions on the elements of felony murder made reference to her "co-conspirator(s)."[8] Petitioner's counsel preferred the use of the term "accomplices," and appears to argue that use of the term "co-conspirator" conflates the elements of felony murder with the separate conspiracy charges.

This Court has held that "the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. Pt. 1, in part, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). However,

> [j]ury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. *A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy.* A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. *Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.*

Syl. Pt. 4, in part, *Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (emphasis added). The circuit court correctly found that since petitioner was, in fact, charged with conspiracy, the use of the term "co-conspirator" in the felony murder instructions was fair and in no way misleading. Accordingly, we find no error in the circuit court's instructions.

---

[8] The jury instructions are not included independently in the appendix record and the circuit court's reading of these particular instructions in the trial transcript is somewhat ineloquent and confusing such as to foreclose a verbatim recreation of how the particular instruction was structured. Regardless, petitioner takes issue only with the use of the term "co-conspirator" therein.

For the foregoing reasons, the circuit court's March 7, 2014, order is hereby affirmed.

Affirmed.

**ISSUED:** May 21, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II

9